**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>JEFFREY CHARLES & ASSOCIATES, INC.,<br><br>*Defendant*. | ) | Civil Action No. 1:26-CV-00244-SLS |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS COUNT V OF THE COMPLAINT**

COMES NOW Plaintiff/Counter-Defendant Naylor Gardens Cooperative Housing Association ("Plaintiff" or the "Association"), by and through counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) and all other applicable rules of the Court, to submit its Memorandum of Points and Authorities in Opposition of Defendant/Counter-Plaintiff Jeffrey Charles & Associates, Inc.'s ("Defendant" or "JCA") Motion to Dismiss Count V of the Complaint. For the reasons stated herein, the Defendant's Motion must be denied.

## INTRODUCTION

The Association has alleged, and continues to maintain, that Defendant is liable for the violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), as asserted in Count V of the Complaint. (Compl. ¶¶ 111-17). At its core, this

case is not about a commercial transaction between two business entities. It is about a property management company hired to manage people's homes. Defendant was retained, *inter alia*, to ensure that residents could safely occupy their units, properly handle monthly housing fees, and to maintain the physical condition of their homes. Accordingly, because the primary purpose of Defendant's engagement was to serve the personal, household, and family needs of the Association's member-residents, the Association has stated a cognizable claim under the CPPA, and Defendant's Motion to Dismiss must be denied.

**LEGAL STANDARD**

"All that the Federal Rules of Civil Procedure require of a complaint is that it contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Smith v. D.C.*, 674 F. Supp. 2d 209, 210 (D.D.C. 2009) (internal quotations omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The pleading rules are to provide notice to the defendant and are "not meant to impose a great burden upon a plaintiff." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Thus, the plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *Twombly*, 550 U.S. at 584.

For a plaintiff to survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974)). "When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor." *Ndondji v. Interpark Inc.*, 768 F. Supp. 2d 264, 271 (D.D.C. 2011) (citing *Leatherman v. Tarrant County Narcotics & Coordination Unit*, 507 U.S. 163, 164 (1993)). Here, Plaintiff has met this pleading standard in alleging its cause of action under the CPPA in Count V of the Complaint.

**ARGUMENT**

The Association has sufficiently pleaded that it received consumer services under the CPPA. "The CPPA is a comprehensive statute designed to provide procedures and remedies for a broad range of practices which injure consumers." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015). It is a "remedial statute that must be construed and applied liberally to promote its purpose." *Id.* For purposes of the CPPA, a "consumer" is, when used as a noun, "a person who does or would purchase, lease (from), or receive consumer goods or services." D.C. Code § 28–3901(a)(2). When used as an adjective, the term "consumer" "describes anything, without exception, which is primarily for personal, household, or family use." *Id.* The CPPA describes "goods and services" as "all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." *Id.* § 28–3901(a)(7). By its Motion, Defendant does not meaningfully dispute that its services were provided for "personal, household, or family use," and has "not shown beyond doubt that the plaintiff[] can

prove no set of facts in support of their DCPPA claim that would entitle [it] to relief." *Chelsea Condo. Unit Owners Ass'n v. 1815 A St.*, 468 F. Supp. 2d 136, 145 (D.D.C. 2007).

Defendant's characterization of its relationship with the Association as merely a business-to-business engagement to market memberships and maintain records disregards the well-pleaded allegations. In fact, the Association's cooperative housing structure makes the personal nature of Defendant's services more pronounced, not less. "An association has standing to bring suit on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)); *see also Saucier v. Countrywide Home Loans*, 64 A.3d 428, 447 (D.C. 2013) (providing that a condominium association has standing to bring claims on behalf of its members). Those requirements are satisfied here. The Association brings this action on behalf of its members, each of whom Defendant agreed to provide consumer management services for their residences. The Association's members hold shares of stock in the cooperative corporation paired with a proprietary lease that grants them the right to occupy their specific unit. The Complaint and its exhibits, viewed in light of the Association's stated purpose, make clear that Defendant was retained to support the Association's residents and unit owners in the personal use and maintenance of their homes and managing their household expenses, including the

management and rental of residential units.[1] Each member's right to remain in their home is directly tied to their compliance with the obligations imposed by the proprietary lease and the Governing Documents—obligations that the Association retained Defendant to administer.

The Management Agreement (the "Agreement"), which is incorporated into the Complaint, specifically states that the contractual relationship is between the "Owner" and the "Agent." *See* Ex. 1 at § XXIX. The Agreement defines: an "[o]wner" as "the Members and Residents of the Cooperative who are governed by the Board of Directors," *id.* at § I(n); a "[m]ember" as "any person, trust or other legal entity, or any combination thereof who holds a Stock Certificate or certificate of stock and proprietary lease evidencing ownership in the Cooperative," *id.* at § I(k); and a "[r]esident" as "any person who is either a Member or who holds a legal lease." *Id.* at § I(k). Accordingly, each Owner, member, and resident has the ability to assert claims against Defendant to the extent Defendant provided its property management services for "household, personal, or family" purposes, in pursuit of a "business opportunity," or for "real estate transactions." D.C. Code § 28–3901(a)(2) and (7). Simply put, Defendant was not contracted to merely manage an abstract legal entity but to manage the homes, finances, and living conditions of individual people.

[1] *See DeBerry v. First Gov't. Mtge. & Invs. Corp.*, 743 A2d 699, 702 (1999) (stating that the Act is meant to include "sales" and "lease arrangements" as part of "real estate transactions").

The Complaint sufficiently alleges that the Association (through and on behalf of its members and residents) engaged Defendant to perform services for non-business purposes. Defendant attempts to align the transactions discussed in *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 172-73 (D.D.C. 2013) and *Quality Air Services, L.L.C. v. Milwaukee Valve Co., Inc.*, 567 F. Supp. 2d 96, 102-03 (D.D.C. 2008) with the purposes of its services provided to the Association. However, both cases are distinct from the instant matter. In *Cannon*, the plaintiff asserted a claim under the CPPA with regard to an insurance policy obtained for a property used primarily for the plaintiff's day care business—a clear business purpose. *Cannon*, 926 F. Supp. 2d 152. In *Quality Air,* the plaintiff—an HVAC installation and repair company—sued another merchant over allegedly defective valves supplied for use in performing its business services, which this Court ultimately determined were not "consumer goods." *Quality Air,* 567 F. Supp. 2d at 98–99. In both cases, the transactions were undertaken by two merchants solely for business purposes and therefore fell outside the scope of consumer transactions contemplated by the CPPA. Defendant's reliance on *Samuel v. Wells Fargo & Co.* and *Edwards v. Ocwen Loan Servicing, LLC*, is similarly misplaced. *See Samuel*, 311 F. Supp. 3d 10, 19-20 (D.D.C. 2018) (plaintiff was not a Wells Fargo customer or borrower, and thus was not a consumer); *Edwards*, 24 F. Supp. 3d at 26-27 (plaintiff failed to allege facts supporting that the loan at issue "was for personal, family or household purposes"). In each of these cases, the customers were purchasing goods and services to advance a profit-making enterprise.

In the instant case, the Complaint expressly identifies the non-commercial consumer services that Defendant agreed to provide to Owners in order to manage their household and household expenses. For example, in assisting each Owner with managing his or her household, Defendant was to collect, deposit, and disburse Membership Fees and monthly assessments pursuant to each Member's Proprietary Lease and the Governing Documents." Compl. ¶¶ 52-57. When Defendant failed to properly collect, deposit, and disburse membership fees and monthly assessments as required under the Agreement, they directly threatened each individual member's standing under their proprietary lease and their right to remain in their home – a non-commercial consequence. Additionally, Defendant was engaged to receive and process individual maintenance requests, communicate directly with Owners regarding repairs, and maintain the units and common areas used by Owners in accordance with the Declaration and by-laws. *Id.* ¶¶ 67-72. The Association also engaged Defendant to maintain its books and records regarding the Property's financial, physical, and operational condition, *id.* ¶¶ 73-77, and to transfer the Associations' books and records to Defendant's successor, *id.* ¶¶ 78-85, for the benefit of the Owners. Each of these functions, which were not performed by Defendant, was to be performed for the personal use of the Owner.

Accordingly, Count V should not be dismissed because discovery into these allegations will demonstrate that these functions are not only obligations integral to maintaining one's household and managing personal household expenses, but may also subject an Owner to the loss of the home in which the member resides.

## **CONCLUSION**

Therefore, based on the foregoing, the Complaint, and its exhibits, Plaintiff/Counter-Defendant Naylor Gardens Cooperative Housing Association requests that this Court deny Defendant's Motion to Dismiss Count V and, further, that the Court deny Defendant's request to preclude any amendment of the pleadings and grant Plaintiff the opportunity to amend, if the Court deems it necessary.

Respectfully submitted,

*/s/ Selena A. Motley*

Selena A. Motley (Fed. Bar No. 241978)
Caroline Y. Lee-Ghosal (Fed. Bar No. 1697129)
Jackson & Campbell, P.C.
2300 N Street, NW, Suite 300
Washington, DC 20037
Telephone: (202) 457-1600
CLeeghosal@Jackscamp.com
SMotley@jackscamp.com
*Counsel for Plaintiff/Counter-Defendant Naylor Gardens Cooperative Housing Association*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of February, 2026, a true and accurate copy of the foregoing was served electronically via CM/ECF on all parties registered to receive such notice.

Jeffrey S. Danzig, Esquire
Law Office of Jeffrey S. Danzig, PLLC
111 Park Place
Falls Church, VA 22046
*Counsel for Defendant*

*/s/ Selena Motley*
Selena A. Motley



6495982v4