**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION

Plaintiff,

v.

JEFFREY CHARLES & ASSOCIATES, INC.

Defendant.

Case No. 1:26-cv-00244-SLS

---

**THIRD-PARTY COMPLAINT:**

JEFFREY CHARLES & ASSOCIATES, INC.
6422 Grovedale Drive, Suite 201C
Alexandria, Virginia 22310

*Third-Party Plaintiff*,

v.

VISION REALTY MANAGEMENT, LLC
11000 Broken Land Parkway, Suite 410
Columbia, MD, 21044
**Serve:** CT Corporation System
1015 15TH STREET NW, Suite 1000
Washington, DC, 20005
(Registered Agent)

*Third-Party Defendant*.

**JEFFREY CHARLES & ASSOCIATES, INC.'S THIRD-PARTY COMPLAINT FOR CONTRIBUTION, INDEMNIFICATION, AND OTHER RELIEF AGAINST VISION REALTY MANAGEMENT, LLC, WITH DEMAND FOR JURY TRIAL**

Defendant/Third-Party Plaintiff Jeffrey Charles & Associates, Inc. ("JCA") or "Defendant"), by and through its undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, hereby files its Third-Party Complaint Against Third-Party

Defendant Vision Realty Management, LLC (“Vision Realty”), stating as follows:

1. JCA denies any and all liability to Plaintiff Naylor Gardens Cooperative Housing Association (“Naylor Gardens”); however, should JCA be found liable to any extent in any way to Naylor Gardens, JCA is entitled to one hundred percent contribution and/or full indemnification from Vision Realty, plus as well as other relief.

PARTIES, JURISDICTION AND VENUE

2. Naylor Gardens is a non-profit housing cooperative association established pursuant to and under the District of Columbia Cooperative Association Act, Title 29, Chapter 11 of the Code of Laws of the District of Columbia with a registered office at 2725 30th Street, S.E., Washington, DC 20020.

3. JCA is a Virginia corporation and property management company authorized to conduct business in the District of Columbia, with a principal place of business of 6422 Grovedale Drive, Suite 201C, Alexandria, Virginia 22310.

4. Vision Realty is Maryland limited liability company authorized to do business in the District of Columbia with a principal place of business of 11000 Broken Land Parkway, Suite 410, Columbia, Maryland 21044.

5. Upon information and belief, all of Vision Realty’s limited liability company members are citizens of the State of Maryland.

6. This Court has subject matter jurisdiction over this action, specifically diversity jurisdiction, because it is a civil matter between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §1332(a). On January 28, 2026, JCA removed this case to this Court from the Superior Court of the District of Columbia. 28 U.S.C. §1446(a).

7. Venue and personal jurisdiction are proper in this Court because Naylor Gardens is located in the District of Columbia, and a substantial part of the events and omissions giving rise to this Third-Party claim took place in the District of Columbia. 28 U.S.C. § 1391(b). The Superior Court of the District of Columbia, where Naylor Gardens initially filed this action before it was removed, is within the district of this Court. 28 U.S.C. § 88.

BACKGROUND

8. On or about June 1, 2023, Naylor Gardens and JCA entered into an agreement for JCA to be the property management company for Naylor Gardens (the "JCA Agreement").

9. A true and accurate copy of the JCA Agreement is attached hereto as **Exhibit A**.

10. Prior and up to June 1, 2023, Vision Realty was the property manager for Naylor Gardens, pursuant to a management agreement between Vision Realty and Naylor Gardens (the "Vision Contract").

11. Upon information and belief, the Vision Contract[1] required Vision Realty to undertake duties generally associated with managing housing cooperatives, including but not necessarily limited to::

a. Collecting, maintaining and spending Naylor Gardens' funds in a prudent manor and for the benefit of Naylor Gardens;

b. Maintaining, security of, conserving, and reconciling Naylor Gardens' bank accounts, including, without limitation, Naylor Gardens' operating account

[1] JCA does not currently possess a copy of the Vision Contract but expects to obtain it in discovery. JCA thus reserves the right to amend this Third-Party Complaint consistent with the Vision Contract and any other pertinent facts provided in discovery. JCA further reserves the right to name and serve additional third-party defendants, subject to JCA's obligation to obtain leave of Court pursuant to Rule 14 of the Federal Rules of Civil Procedure.

and escrow account for security deposits and any other escrowed funds;

c. Maintaining an accurate rent roll, tenant ledger, and vacancy list for the individual residential housing units in Naylor Gardens;

d. Collecting carrying charges from Naylor Gardens' members, maintaining accurate records of Naylor Gardens' members who are delinquent in the payment of carrying charges, and taking action to collect delinquent carrying charges and other funds owed to Naylor Gardens;

e. Complying with governmental requirements; maintaining and making repairs on the residential units and common areas of Naylor Gardens' real property;

f. Maintaining for Naylor Gardens proper balance sheets, general ledgers, income statements, budget documents, and other accounting and business records; and,

g. Providing all the aforementioned items and funds – and accounting and reconciliation of same – periodically to Naylor Gardens and to Naylor Gardens and its new property manager (JCA) timely upon the termination or conclusion of the Vision Contract.

12. JCA denies any and all liability to Naylor Gardens claimed by Naylor Gardens in its initial Complaint (the "Complaint") filed against JCA.[2] However, in the unlikely event and to the extent JCA is found liable to Naylor Gardens, any and all such liability was

---

[2] Naylor Gardens initial Complaint is attached hereto as **Exhibit B**. The attachment of Naylor Gardens' Complaint hereto is for reference only and does not constitute an admission by JCA to any of the allegations of the Complaint. JCA's answer to the Complaint (with Counterclaim) is attached hereto as **Exhibit C** and shows JCA's responses to the specific allegations in Naylor Gardens' Complaint.

proximately caused in whole or in part by Vision Realty's breaches of its contractual and other legal duties to Naylor Gardens, entitling JCA to contribution and indemnification from Vision Realty.

13. Naylor Gardens' Complaint alleges, *inter alia*, that JCA failed to collect and manage Naylor Gardens' Funds. *See e.g.* Compl. at 9-12, ¶¶ 51-66. JCA denies any and all liability with respect to the collection and management of Naylor Gardens' funds; but if any such liability is found, it was caused in whole or in part by Vision Realty's breaches of its contractual and other legal duties to Naylor Gardens with respect to Naylor Gardens' funds, including but not limited to the following:

a. After the Vision Contract ended, Vision Realty continued to hold Naylor Gardens' funds for at least six (6) months, impeding Naylor Gardens' cash flow (*see e.g.* June 28, 2023 letter from Naylor Gardens' then President to Vision Realty, attached hereto as **Exhibit D**);

b. After the Vision Contract ended, Vision Realty continued to write checks from Naylor Gardens' funds in at least the amount of $105,000, which funds should have been returned to Naylor Gardens;

c. After the Vision Contract ended, Vision Realty failed and refused to turn over any funds from a bank account with Naylor Gardens' funds in Capital One Bank;

d. Naylor Gardens alleges that JCA is responsible for a supposed "shortfall" of Naylor Gardens' funds in its Trust Account at John Marshall Bank (the "Trust Account"). Compl. ¶¶ 58-60. According to the Complaint, $269,682.47, JCA deposited $269,682.47 into the Trust Account, but, per the Complaint,

$542,487 should have been in the Trust Account per Naylor Gardens' financial statements. *Id.* ¶¶ 59-60. JCA denies any and all liability for this supposed "escrow shortfall" alleged by Naylor Gardens. *Id.* ¶ 60. However, JCA deposited all escrowed funds it received from Vision Realty into the Trust Account. There was a higher number in the Naylor Gardens financial statements at (or around) the time these funds were transferred from Vision Realty, and JCA asked Vision Realty about this discrepancy. Vision Realty did not provide any additional funds or a sufficient response. JCA informed Naylor Gardens of these communications;

e. Vision Realty refused to provide JCA with the passwords to Naylor Gardens' onsite computer systems, which contained information about funds owed by and to Naylor Gardens including carrying charges, the rent roll, and vacancy information, among other things;

f. Vision Realty provided only a paper list of vacancies that was inaccurate and understated the vacancies by dozens; and,

g. The list of accounts payable provided by Vision Realty grossly understated Naylor Gardens' debts by at least hundreds of thousands of dollars.

14. Naylor Gardens' Complaint alleges, *inter alia*, that JCA failed to maintain Naylor Gardens' records, which, per the Complaint, caused damage to Naylor Gardens. *See e.g.* Compl. at 13-16, ¶¶ 73-88. JCA denies any and all liability to Naylor Gardens and further denies that it did not sufficiently maintain Naylor Gardens' records; but if any such liability is found, it was caused in whole or in part by Vision Realty's breaches of its contractual and other legal duties

to Naylor Gardens in keeping records and in providing documents and information after the conclusion of the Vision Contract, including but not necessarily limited to:

a. Vision Realty's failure and refusal to provide and reconcile bank accounts and other financial and accounting documents after the Conclusion of the Vision Contract;

b. Vision Realty's failure and refusal to permit JCA to access Naylor Gardens' onsite computer systems, which contained accounting and other necessary information;

c. Vision Realty's failure and refusal to provide a final accounting upon the conclusion of the Vision Contract;

d. Vision Realty's failure and refusal to provide adequate maintenance histories and service provider information, contracts, and payment histories; and,

e. Vision Realty's failure to keep accurate records of units vacancies, who resided in the occupied units, payment and rental histories, and other tenant and member data.

15. Indeed, in the unlikely event that JCA is found liable to Naylor Gardens, JCA is entitled to contribution and indemnification from Vision Realty in light of Vision Realty's aforesaid breaches of contractual and other legal duties.

16. Naylor Gardens has sought to plead a Count II for Breach of Fiduciary Duty in its Complaint against JCA, citing D.C. Code Section 47-2853.195. Compl. Count II, ¶¶ 95-100. Assuming without conceding (contesting and pleading in the alternative) that a property management agent, such as JCA or Vision Realty, may be liable to a housing cooperative for breach of fiduciary duty pursuant to D.C. Code Section 47-2853.195 or otherwise, JCA is

entitled to contribution and indemnification for Vision Realty for Vision Realty's breaches of its Fiduciary Duties to Naylor Gardens, as follows:

a. Pursuant to D.C. Code Section 47-2853.195 (Fiduciary duties of a property manager): "(a) A licensee engaged to manage real estate shall: (1) Perform in accordance with the terms of the property management agreement; (2) Exercise ordinary care; (3) Disclose in a timely manner to the owner material facts of which the licensee has actual knowledge concerning the property; (4) Maintain confidentiality of all personal and financial information received from the client during the brokerage relationship and any other information that the client requests during the brokerage relationship be maintained confidential unless otherwise provided by law or the owner consents in writing to the release of such information; [and] (5) Account for, in a timely manner, all money and property received in which the owner has or may have an interest . . ."

b. In its capacity as the property manager for Naylor Gardens, Vision Realty owed Naylor Gardens a fiduciary duty, including but not limited to, a duty of good faith, full disclosure and loyalty.

c. By its actions and omissions aforesaid, Vision Realty breached its fiduciary duties to Naylor Gardens.

d. To the extent JCA is found liable to Naylor Gardens for JCA's breach of fiduciary duty or otherwise, Vision Realty's breach of its contract with Naylor Gardens and/or its breach of its fiduciary duty it owed to Naylor

Garden that is the direct and proximate cause of any breach by JCA and JCA is entitled to contribution and indemnification from Naylor Gardens.

17. Naylor Gardens has sought to plead a Count III for Negligence in its Complaint against JCA. Compl. Count III, ¶¶ 101-06. Assuming without conceding (contesting and pleading in the alternative) that a property management agent, such as JCA or Vision Realty, may be liable to a housing cooperative with which the management agent has a written contract, JCA is entitled to contribution and indemnification for Vision Realty for Vision Realty's negligence in carrying out its management obligations to Naylor Gardens, as follows:

a. Vision Realty owed a duty of care to Naylor Gardens in carrying out its services as the property manager for Naylor Gardens.

b. By its actions and omissions aforesaid, Vision Realty engaged in negligent acts and omissions that resulted in a breach of Vision Realty's duty of care to Naylor Gardens.

c. Vision Realty knew or should have known that its actions and omissions set forth herein would cause substantial damages to Naylor Gardens.

d. To the extent that JCA is found liable to Naylor Gardens for Vision Realty's negligence that proximately caused damage to Naylor Gardens, JCA is entitled to contribution and indemnification from Vision Realty.[3]

---

[3] As a matter of law, JCA denies that a property management company with a written contract with a housing cooperative such as Naylor Gardens can be liable to the cooperative for Violation of the District of Columbia Consumer Protection and Procedures Act, as Naylor Gardens purports to allege in Count V of its Complaint against JCA. Compl. Count V, ¶¶ 111-17). JCA has moved to dismiss Count V of Naylor Gardens' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). However, to the extent that the District of Columbia Consumer Protection and Procedures Act (the "Act") is applicable and actionable as to JCA in this case, the Act is also applicable and actionable as to Vision Realty's actions and omissions set forth in this Third-Party Complaint, entitling JCA to contribution and indemnification from Vision Realty for any

**<u>COUNT I: CONTRIBUTION AND INDEMNIFICATION</u>**

18. JCA incorporates all foregoing paragraphs as if fully set forth herein.

19. To the extent that JCA is ultimately found liable to Naylor Gardens in the instant case, it will be due, in whole or in part, to the improper actions and omissions of Vision Realty set forth herein.

20. Further, JCA has incurred and will continue to incur attorneys' fees and legal costs (potentially including expert witness fees) in the above-captioned matter as a natural and proximate consequence of Vision Realty's wrongful actions and omissions aforesaid.

21. Thus, JCA is entitled to contribution and indemnification from Vision Realty for any amount JCA is adjudged liable to Naylor Gardens or is otherwise required to pay Naylor Gardens in the above-captioned matter, plus JCA's attorneys' fees and legal costs incurred in the above-captioned matter. *See Taylor v. Tellez*, 610 A.2 252, 255-56 (D.C. 1992) (allowing plaintiff recovery of attorneys' fees incurred in litigation with another party caused by defendant's conduct).

**COUNT II: TORTIOUS INTERFERENCE WITH**
**<u>JCA'S CONTRACT AND BUSINESS RELATIONSHIP WITH NAYLOR GARDENS</u>**

22. JCA incorporates all prior paragraphs as if fully set forth herein.

23. At all relevant times, Vision Realty has been aware of the JCA Agreement for JCA to serve as the property management agent for Naylor Gardens.

24. Vision Realty tortiously, intentionally, and wrongfully interfered with the JCA Agreement and JCA's business relationship with Naylor Gardens by Vision Realty's actions and omissions aforesaid, including but not necessarily limited to the failure to remit timely

---

violations of the Act that caused damage to Naylor Gardens and for which JCA may be found liable.

Naylor Gardens' funds; the failure to turn over access to all Naylor Gardens' bank accounts; the failure to maintain and provide records of Vision Realty's management of Naylor Gardens; the failure to turn over management records and other data that was maintained by Vision Realty in a timely and/or adequate manor; the failure to provide sufficient reconciliations of Naylor Gardens' accounts and an accounting upon the conclusion of the Vision Contract; the failure to pay disbursements totaling hundreds of thousands of dollars that were past due prior to the termination of the Vision Contract; the failure to properly maintain the property and facilities of Naylor Gardens in compliance with local laws and building codes; the failure to provide access to the onsite software in managing the property, and ultimately leaving Naylor Gardens' financials, properties, and general operations in disarray as JCA transitioned into management of the property.

25. Vision Realty used improper means of interfering with the JCA Agreement and/or the business relationship between JCA and Naylor Gardens, including but not necessarily limited to, breaching Vision Realty's contractual and/or fiduciary duties to Naylor Gardens, as well as misleading JCA and/or Naylor Gardens into believing that Vision Realty would assist JCA and Naylor Gardens in transferring property management services to JCA, including but not necessarily limited to, transferring to JCA and/or Naylor Gardens financial information, funds, necessary records, and improperly maintaining buildings and structures.

26. The conduct of Vision Realty was perpetrated with the intentional and improper purpose of interfering with the contractual and business relationship between JCA and Naylor Gardens, for the benefit of Vision Realty and avoidance of its own liabilities for its mismanagement of Naylor Gardens prior to JCA's involvement.

27. Vision Realty's aforesaid interference contributed in whole or in part to cause

Naylor Gardens to breach the JCA Agreement, caused the termination of the JCA Agreement and the premature end of the business relationship between JCA and Naylor Gardens, and made performance under the JCA Agreement more difficult.[4]

28. To the extent it is held that JCA breached the JCA Agreement (which JCA denies), Vision Realty's aforementioned interference caused JCA's breach of the JCA Agreement and the premature end of the business relationship between JCA and Naylor Gardens.

29. JCA is entitled to an accounting of all money and property of Naylor Gardens that Vision Realty received or handled in which Naylor Gardens has or may have had an interest, an award of compensatory damages, punitive damages, attorneys' fees and any other relief deemed just and appropriate by this Court.

## PRAYER FOR RELIEF

WHEREFORE, pursuant to the Background and Counts above, Third-Party Plaintiff Jeffrey Charles & Associates respectfully requests that this Court enter judgment in its favor against Third-Party Defendant Vision Realty Management, LLC, awarding JCA the following relief:

a. Any amount for which JCA is adjudged liable to Naylor Gardens in the above-captioned matter, which Naylor Gardens alleges in its Complaint is Three Million Dollars ($3,000,000) in compensatory damages, trebled, plus $500,000 in punitive damages, interest, costs and attorneys' fees and any further just and proper relief;

[4] Nothing herein waives or excuses Naylor Gardens' breaches of the JCA Agreement, and JCA reserves the right to recover any and all damages from Naylor Gardens for same. JCA further reserves the right to seek joint and several liability between Naylor Gardens and Vision Realty for Naylor Gardens' breaches of the JCA Agreement, and Vision Realty's interference with the JCA Agreement.

b. JCA's attorneys' fees and legal costs (including expert witness fees) expended in this matter;

c. Compensatory damages of Four Hundred Seventy Five Thousand Dollars ($475,000) (either solely against Vision Realty or jointly and severally with Naylor Gardens);

d. Punitive Damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000);

e. Pursuant to D.C. Code Section 47-2853.195, to the extent applicable, an accounting of all money and property of Naylor Gardens that Vision Realty received or handled in which Naylor Gardens has or may have had an interest; and,

f. Any further relief the Court deems just and proper.

**JURY DEMAND**

Third-Party Plaintiff Jeffrey Charles & Associates, Inc. hereby demands a jury trial on all issues so triable.

/s/ Jeffrey S. Danzig
Jeffrey S. Danzig, Esquire
LAW OFFICE OF JEFFREY S. DANZIG, PLLC
DC Bar Number 461541

Respectfully submitted,

JEFFREY CHARLES & ASSOCIATES, INC.
By Counsel:

/s/ Jeffrey S. Danzig
Jeffrey S. Danzig, Esquire
LAW OFFICE OF JEFFREY S. DANZIG, PLLC
111 Park Place
Falls Church, VA 22046

jdanzig@danziglaw.com
(703) 241-4918 – Telephone
(815) 301-9561 – Facsimile
DC Bar Number 461541
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of February 2026, a true and accurate copy of the foregoing was served electronically via the Court's CM/ECF system on all counsel of record.

/s/ Jeffrey S. Danzig
Jeffrey S. Danzig, Esquire
LAW OFFICE OF JEFFREY S. DANZIG, PLLC
DC Bar Number 461541