**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION | : | |
| Plaintiff, | : | Case No. 1:26-cv-00244-SLS |
| v. | : | |
| JEFFREY CHARLES & ASSOCIATES, INC. | : | |
| Defendant. | : | |

**ANSWER AND COUNTERCLAIM OF JEFFREY CHARLES & ASSOCIATES, INC., WITH JURY DEMAND**

Defendant Jeffrey Charles & Associates, Inc. ("JCA" or "Defendant"), by and through its undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, hereby submits its Answer to the Complaint filed by Naylor Gardens Cooperative Housing Association (“Naylor Gardens” or “Plaintiff”), stating as follows:

**GENERAL DENIAL**

Pursuant to Federal Rule of Civil Procedure 8(b)(3), JCA hereby denies all of the allegations contained in the Complaint, except those allegations specifically admitted herein and generally denies all liability alleged by Plaintiff.

**ANSWER TO SPECIFIC ALLEGATIONS**

1. Defendant admits the allegations in Paragraph 1 of the Complaint.

2. Defendant admits the allegations in the first sentence of Paragraph 2 of the Complaint. Defendant is without sufficient information to admit or deny the allegations in the second sentence of Paragraph 2.

3. Defendant admits the allegations in Paragraph 3 of the Complaint.



EXHIBIT C

## JURISDICTION

4. Allegations of jurisdiction require no response. To the extent that a response is required, Defendant denies the allegation in Paragraph 4 that the Superior Court of the District of Columbia has jurisdiction over this matter and these parties.

## FACTUAL BACKGROUND

5. Defendant admits that "[o]n or about June 1, 2023, NGCHA and JCA entered into a Management Agreement." The remaining allegations in Paragraph 5 of the Complaint purports to state legal conclusions which do not require a response. Defendants refer to Exhibit 1 of the Complaint in its entirety for its complete contents, which speaks for itself. To the extent a response is required, Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 5.

6. Defendant admits the allegations in Paragraph 6 of the Complaint.

7. Paragraph 7 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 7 refers to or characterizes language in Exhibits 1 or 2 to the Complaint, the documents speak for themselves. To the extent a response is required, Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 7 because, among other reasons, Paragraph 7 refers to "certain policies and procedures," "property management and related services," and "Management fees and other consideration," which are not defined or identified.

8. Defendant admits the allegations in Paragraph 8 of the Complaint.

9. Paragraph 9 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 9 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the

cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the language quoted by Plaintiff is consistent with the language of the cited source and otherwise denies the remaining allegations of this paragraph.

10. Defendant admits that Defendant withdrew payments due to it from Plaintiff's account. Defendant denies the remaining allegations in Paragraph 10 of the Complaint.

11. Defendant admits that the Agreement was terminated effective September 30, 2024. Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 11 of the Complaint because, among other reasons, "acting as NGCHA's property manager" is vague and undefined.

12. Defendant denies the allegations in Paragraph 12 of the Complaint.

13. Paragraphs 13 through 36 of the Complaint are preceded by a heading that reads "JCA's Failures Relating to Turning Over, Marketing, Selling, and Leasing the Property's Vacant Units." Because this is a heading rather than a specific allegation, no response is required. Nevertheless, Defendant denies that any paragraphs under this heading (i.e., Paragraphs 13 through 36) contain "JCA's Failures Relating to Turning Over, Marketing, Selling, and Leasing the Property's Vacant Units." Defendant thus denies Paragraphs 13 through 36 (inclusive) of the Complaint as these paragraphs purport to incorporate and refer back to the aforementioned heading, and no further response to these paragraphs is required. To the extent any further response is required, Defendant provides such responses as follows in Paragraphs 13 through 36 herein. Regarding the allegations contained in Paragraph 13 of the Complaint, Paragraph 13 purports to state legal conclusions which do not require a response. To the extent Paragraph 13 refers to or characterizes language in Exhibit 2 to the Complaint,

the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.[1]

14. Paragraph 14 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 14 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, meaning, context and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

15. Paragraph 15 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 15 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

16. Paragraph 16 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 16 refers to or characterizes language in Exhibit 2

[1] Instead, merely repeating the language of the cited documents, in many paragraphs, such as this one, Plaintiff uses terms such as "recognized," "required," etc. In any event, Defendant has admitted that the Agreement and Plan attached to the Complaint are true and accurate copies.

to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 16 because, among other things, Plaintiff ascribes a purpose to certain requirements under the Management Plan and Defendant does not have knowledge of Plaintiff's rationale or intended purpose for the terms or conditions contained in the Management Plan.

17. Paragraph 17 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 17 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. To the extent a response is required, Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 17 because, among other things, Plaintiff ascribes a purpose to certain requirements under the Agreement and Defendant does not have knowledge of Plaintiff's rationale or intended purpose for the terms or conditions contained in the Agreement.

18. Paragraph 18 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 18 refers to or characterizes language in Exhibit 2 to the Complaint, the document speaks for itself. To the extent a response is required, Defendant denies the allegations of Paragraph 18 and the selective use of language is incomplete and misleading.

19. Paragraph 19 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 19 refers to or characterizes language in Exhibit 2 to the Complaint, the document speaks for itself. To the extent a response is required, Defendant denies the allegations of Paragraph 19 and the selective use of language is incomplete and misleading.

20. Paragraph 20 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 20 refers to or characterizes language in Exhibit 2 to the Complaint, the document speaks for itself. To the extent a response is required, Defendant denies the allegations of Paragraph 20 and the selective use of language is incomplete and misleading.

21. Defendant denies the allegations in Paragraph 21 of the Complaint.

22. Defendant denies the allegations in Paragraph 22 of the Complaint.

23. Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 23 of the Complaint; among other reasons the report referenced in the paragraph is not attached to the Complaint. To the extent Paragraph 23 refers to or characterizes language in such report, the document speaks for itself.

24. Defendant denies the allegations in Paragraph 24 of the Complaint.

25. Paragraph 25 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 25 refers to or characterizes language in Exhibit 2 to the Complaint, the document speaks for itself. To the extent a response is required, Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 25 because, among other things, Plaintiff ascribes a purpose to certain requirements under the Management Plan and Defendant does not have knowledge of Plaintiff's rationale or intended purpose for the terms or conditions contained in the Management Plan.

26. Defendant is without sufficient knowledge or information to admit or deny all the allegations of Paragraph 26 of the Complaint because, among other things, the December 2023 report that Plaintiff references in Paragraph 26 is not provided.

27. Defendant denies the allegations in Paragraph 27 of the Complaint.

28. Defendant denies the allegations in Paragraph 28 of the Complaint.

29. Defendant denies the allegations in Paragraph 29 of the Complaint.

30. Paragraph 30 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 30 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

31. Paragraph 31 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 31 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

32. Paragraph 32 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 32 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

33. Defendant denies the allegations in Paragraph 33 of the Complaint.

34. Defendant denies that it hired a contractor "in a manner inconsistent with the Agreement." Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 34 of the Complaint because, among other reasons, the details provided are vague and ambiguous.

35. Defendant is without sufficient knowledge or information to admit or deny the allegations in Paragraph 35 of the Complaint because, among other reasons, the "comparison" referenced in Paragraph 35 is not provided.

36. Defendant denies the allegations in Paragraph 36 of the Complaint.

37. Paragraphs 37 through 50 of the Complaint are preceded by a heading that reads "JCA's Failures in Obtaining Necessary Government Licenses and Permits and Complying with Other Governmental Requirements." Because this is a heading rather than a specific allegation, no response is required. Nevertheless, Defendant denies that any paragraphs under this heading (i.e., Paragraphs 37 through 50) contain "JCA's Failures in Obtaining Necessary Government Licenses and Permits and Complying with Other Governmental Requirements." Defendant thus denies Paragraphs 37 through 50 (inclusive) of the Complaint as these paragraphs purport to incorporate and refer back to the aforementioned heading, and no further response to these paragraphs is required. To the extent any further response is required, Defendant provides such responses as follows in Paragraphs 37 through 50 herein. Regarding the allegations contained in Paragraph 37 of the Complaint, Paragraph 37 purports to state legal conclusions which do not require a response. To the extent Paragraph 37 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required,

Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

38. Defendant is without sufficient information to admit or deny the allegations in Paragraph 38 of the Complaint.

39. Defendant denies the allegations in Paragraph 39 of the Complaint.

40. Defendant denies the allegations in Paragraph 40 of the Complaint.

41. Defendant denies the allegations in Paragraph 41 of the Complaint.

42. Defendant denies the allegations in Paragraph 42 of the Complaint.

43. Defendant denies the allegations in Paragraph 43 of the Complaint.

44. Defendant is without sufficient knowledge or information to admit or deny the allegations in Paragraph 44 of the Complaint because the calculations for the loss "[p]rojected over a five-year period." To the extent Paragraph 44 alleges, explicitly or impliedly, that Defendant is responsible for such losses, Defendant denies such allegation.

45. Defendant denies the allegations in Paragraph 45 of the Complaint.

46. Defendant denies the allegations in Paragraph 46 of the Complaint.

47. Defendant denies the allegations in Paragraph 47 of the Complaint.

48. Defendant denies the allegations in Paragraph 48 of the Complaint.

49. Paragraph 49 of the Complaint refers to language from Exhibit 1 to the Complaint; Exhibit 1 to the Complaint speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies

the remaining allegations of this paragraph.

50. Defendant denies the allegations in Paragraph 50 of the Complaint.

51. Paragraphs 51 through 66 of the Complaint are preceded by a heading that reads "JCA's Failures In Collection and Management of NGCHA's Funds." Because this is a heading rather than a specific allegation, no response is required. Nevertheless, Defendant denies that any paragraphs under this heading (i.e., Paragraphs 51 through 66) contain "JCA's Failures In Collection and Management of NGCHA's Funds." Defendant thus denies Paragraphs 51 through 66 (inclusive) of the Complaint as these paragraphs purport to incorporate and refer back to the aforementioned heading, and no further response to these paragraphs is required. To the extent any further response is required, Defendant provides such responses as follows in Paragraphs 51 through 66 herein. Regarding the allegations contained in Paragraph 51 of the Complaint, Paragraph 51 purports to state legal conclusions which do not require a response. To the extent Paragraph 51 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

52. Paragraph 52 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 52 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent

with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

53. Paragraph 53 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 53 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

54. Paragraph 54 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 54 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

55. Paragraph 55 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 55 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

56. Paragraph 56 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 56 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

57. Paragraph 57 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 57 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

58. Paragraph 58 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 58 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

59. Regarding the allegations in Paragraph 59 of the Complaint, Defendant admits depositing money into an account at John Marshall Bank in or about July 2023. Defendant is

without sufficient knowledge or information to admit or deny all other allegations of Paragraph 59.

60. To the extent Paragraph 60 of the Complaint alleges, explicitly or impliedly, that Defendant is responsible for any "escrow shortfall," Defendant denies such allegation. Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 60 of the Complaint.

61. Defendant denies the allegations in Paragraph 61 of the Complaint.

62. Paragraph 62 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 62 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

63. Defendant denies the allegations in Paragraph 63 of the Complaint.

64. Defendant denies the allegations in Paragraph 64 of the Complaint.

65. Defendant is without sufficient knowledge or information to admit or deny all other allegations of Paragraph 65 of the Complaint.

66. Defendant denies the allegations in Paragraph 66 of the Complaint.

67. Paragraphs 67 through 72 of the Complaint are preceded by a heading that reads "JCA'S Failures to Maintain and Perform Repairs to the Property." Because this is a heading rather than a specific allegation, no response is required. Nevertheless, Defendant denies that any paragraphs under this heading (i.e., Paragraphs 67 through 72) contain "JCA'S Failures to

Maintain and Perform Repairs to the Property." Defendant thus denies Paragraphs 67 through 72 (inclusive) of the Complaint as these paragraphs purport to incorporate and refer back to the aforementioned heading, and no further response to these paragraphs is required. To the extent any further response is required, Defendant provides such responses as follows in Paragraphs 67 through 72 herein. Regarding the allegations contained in Paragraph 67 of the Complaint, to the extent Paragraph 67 refers to language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

68. To the extent Paragraph 68 of the Complaint refers to language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

69. Defendant denies the allegations in Paragraph 69 of the Complaint.

70. Defendant denies the allegations in Paragraph 70 of the Complaint.

71. Defendant admits that some tenants of the Property submitted complaints to Defendant regarding needed maintenance and repairs to their respective apartments. Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 71 of the Complaint regarding the specific dates that "certain tenants" submitted complaints

because no details are given regarding the alleged complaints. In addition, without identification of the specific complaints, Defendant has no information regarding the nature of such complaints. Defendant denies all other allegations in Paragraph 71.

72. Defendant denies the allegations in Paragraph 72 of the Complaint.

73. Paragraphs 73 through 88 of the Complaint are preceded by a heading that reads "JCA's Failure to Maintain Records and Comply with Its Obligations Before and After Termination of the Agreement." Because this is a heading rather than a specific allegation, no response is required. Nevertheless, Defendant denies that any paragraphs under this heading (i.e., Paragraphs 73 through 88) contain "JCA's Failure to Maintain Records and Comply with Its Obligations Before and After Termination of the Agreement." Defendant thus denies Paragraphs 73 through 88 (inclusive) of the Complaint as these paragraphs purport to incorporate and refer back to the aforementioned heading, and no further response to these paragraphs is required. To the extent any further response is required, Defendant provides such responses as follows in Paragraphs 73 through 88 herein. Regarding the allegations contained in Paragraph 73 of the Complaint, to the extent Paragraph 73 refers to and characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning, and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

74. To the extent Paragraph 74 of the Complaint refers to language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required,

Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

75. Paragraph 75 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 75 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

76. Defendant denies the allegations in Paragraph 76 of the Complaint.

77. Paragraph 77 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 77 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

78. Defendant denies the allegations in Paragraph 78 of the Complaint.

79. Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 79 of the Complaint.

80. Defendant denies the allegations in Paragraph 80 of the Complaint.

81. Defendant denies the allegations in Paragraph 81 of the Complaint.

82. Paragraph 82 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 82 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning and requirements of the cited source and otherwise denies the remaining allegations of this paragraph.

83. Defendant admits that Plaintiff requested materials related to Plaintiff after the termination of the Agreement. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 83 of the Complaint because, among other reasons, the terms "books and records" and "final accounting" are vague and undefined in the Complaint.

84. Defendant denies the allegations in Paragraph 84 of the Complaint.

85. Defendant denies the allegations of Paragraph 85 of the Complaint.

86. Paragraph 86 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 86 refers to or characterizes language in Exhibit 1 to the Complaint, the document speaks for itself. Defendant respectfully refers the Court to the cited Exhibit for a full and fair statement of its terms. To the extent a response is required, Defendant admits the allegations only to the extent that the reference by Plaintiff is consistent with the language, context, meaning and requirements of the cited source and otherwise denies the remaining allegations of this paragraph. Defendant further denies that it owes any sums to Plaintiff, denies any default under the Agreement, and further denies that Plaintiff is entitled to interest, costs of collection or attorneys' fees.

87. Defendant admits that Plaintiff sent correspondence in or about June 2025 demanding many items and otherwise is without sufficient information to admit or deny the allegations of Paragraph 87 because, among other reasons, it does not contain or refer to specific correspondence and is otherwise vague and misleading.

88. Defendant is without sufficient information to admit or deny the allegations of Paragraph 88 of the Complaint because, among other reasons, it does not contain or refer to specific correspondence and is otherwise vague and misleading.

**COUNT I – BREACH OF CONTRACT**

89. Paragraph 89 of the Complaint merely incorporates prior paragraphs of the Complaint and thus does not require a response. To the extent a response is required, Defendant incorporates the responses set forth in paragraphs 1 through 88, inclusive, above.

90. Defendant admits the allegations in Paragraph 90.

91. Paragraph 91 of the Complaint purports to state legal conclusions which do not require a response.

92. Paragraph 92 of the Complaint purports to state legal conclusions which do not require a response.

93. Paragraph 93 of the Complaint purports to state legal conclusions which do not require a response. Defendant denies the remaining allegations in Paragraph 93.

94. Defendant denies the allegations in Paragraph 94 of the Complaint.

**COUNT II – BREACH OF FIDUCIARY DUTY**

95. Paragraph 95 of the Complaint merely incorporates prior paragraphs of the Complaint and thus does not require a response. To the extent a response is required, Defendant incorporates the responses set forth in paragraphs 1 through 94, inclusive, above.

96. Paragraph 96 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 96 refers to language in the D.C. Code, the language in the D.C. Code speaks for itself; Defendant denies any liability under the referenced D.C. Code Section.

97. Paragraph 97 of the Complaint purports to state legal conclusions which do not require a response. To the extent a response is required, Defendant denies that the Code Section referenced in Paragraph 96 imposes the duties on Defendant that are listed in Paragraph 97. Defendant otherwise is without sufficient information to admit or deny the allegations of Paragraph 97.

98. Defendant denies the allegations in Paragraph 98 of the Complaint.

99. Defendant denies the allegations in Paragraph 99 of the Complaint.

100. Defendant denies the allegations in Paragraph 100 of the Complaint.

**COUNT III – NEGLIGENCE**

101. Paragraph 101 of the Complaint merely incorporates prior paragraphs of the Complaint and thus does not require a response. To the extent a response is required, Defendant incorporates the responses set forth in paragraphs 1 through 100, inclusive, above.

102. Paragraph 102 of the Complaint purports to state legal conclusions which do not require a response. To the extent a response is required, Defendant is without sufficient information to admit or deny the allegations of Paragraph 102.

103. Defendant denies the allegations in Paragraph 103 of the Complaint.

104. Defendant denies the allegations in Paragraph 104 of the Complaint.

105. Defendant denies the allegations in Paragraph 105 of the Complaint.

106. Defendant denies the allegations in Paragraph 106 of the Complaint.

**COUNT IV – ACCOUNTING**

107. Paragraph 107 of the Complaint merely incorporates prior paragraphs of the Complaint and thus does not require a response. To the extent a response is required, Defendant incorporates the responses set forth in paragraphs 1 through 106, inclusive, above.

108. Paragraph 108 of the Complaint purports to state legal conclusions which do not require a response. To the extent Paragraph 108 refers to language in the D.C. Code, the language in the D.C. Code speaks for itself; Defendant denies any liability under the referenced D.C. Code Section.

109. Paragraph 109 of the Complaint purports to state legal conclusions which do not require a response. To the extent a response is required, Defendant denies that the Code Section referenced in Paragraph 108 imposes the requirements set forth in Paragraph 109; Defendant is otherwise without sufficient information to admit or deny the allegations set forth in Paragraph 109.

110. Defendant denies the allegations in Paragraph 110 of the Complaint.

**COUNT V – VIOLATION OF DISTRICT OF COLUMBIA CONSUMER PROTECTION AND PROCEDURES ACT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant is moving to dismiss Count V of the Complaint, comprised of Paragraphs 111-117, for failure to state a claim upon which relief may be granted. Thus, no response is required herein to Count V and Paragraphs 111-117. To the extent a response is required, Defendant states as follows:

111. Paragraph 111 of the Complaint merely incorporates prior paragraphs of the Complaint and thus does not require a response. To the extent a response is required, Defendant incorporates the responses set forth in paragraphs 1 through 110, inclusive, above.

112. Paragraph 112 of the Complaint purports to state legal conclusions which do not

require a response. To the extent a response is required, Defendant denies the allegations of Paragraph 112.

113. Paragraph 113 of the Complaint purports to state legal conclusions which do not require a response. To the extent a response is required, Defendant denies the allegations of Paragraph 113.

114. Paragraph 114 of the Complaint purports to state legal conclusions which do not require a response. To the extent a response is required, Defendant denies the allegations of Paragraph 114.

115. Defendant denies the allegations in Paragraph 115 of the Complaint.

116. Defendant denies the allegations in Paragraph 116 of the Complaint.

117. Defendant denies the allegations in Paragraph 117 of the Complaint.

## COUNT VI – TORTIOUS INTERFERENCE WITH NGCHA'S CONTRACTUAL RELATIONS WITH ITS SUBLEASING MEMBERS

118. Paragraph 118 of the Complaint merely incorporates prior paragraphs of the Complaint and thus does not require a response. To the extent a response is required, Defendant incorporates the responses set forth in paragraphs 1 through 117, inclusive, above.

119. Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 119 of the Complaint because the phrase "the agreements in place" is vague and ambiguous.

120. Defendant denies the allegations in Paragraph 120 of the Complaint.

121. Defendant denies the allegations in Paragraph 121 of the Complaint.

122. Defendant denies the allegations in Paragraph 122 of the Complaint.

## COUNT VII -- TORTIOUS INTERFERENCE WITH NGCHA'S CONTRACTUAL RELATIONS WITH EJF

123. Paragraph 123 of the Complaint merely incorporates prior paragraphs of the Complaint and thus does not require a response. To the extent a response is required, Defendant incorporates the responses set forth in paragraphs 1 through 122, inclusive, above.

124. Defendant admits that Plaintiff has engaged EJF as its property manager and is otherwise without sufficient information to admit or deny the allegations in Paragraph 124 of the Complaint.

125. Defendant denies the allegations in Paragraph 125 of the Complaint.

126. Defendant denies the allegations in Paragraph 126 of the Complaint.

127. Defendant denies the allegations in Paragraph 127 of the Complaint.

128. Defendant denies the allegations in Paragraph 128 of the Complaint.

129. Defendant denies the allegations in Paragraph 129 of the Complaint.

130. Plaintiff follows Paragraph 129 of the Complaint with a "Prayer for Relief" that does not require a response. To the extent a response is required, Defendant denies that Plaintiff is entitled to any relief.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

131. Defendants set forth the following defenses without assuming the burden of proof as to any issue as to which Plaintiffs bear the burden of proof under applicable law.

132. The Complaint, in whole or in part, fails to state a claim upon which relief may be granted.

133. None of the allegations of the Complaint shall be deemed admitted unless specifically admitted in this answer.

134. Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

135. Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

136. Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

137. Plaintiff's claims are barred in whole or in part by the doctrine of assumption of risk.

138. Plaintiff's claims are barred in whole or in part by the doctrine of contributory negligence.

139. Plaintiff's claims are barred in whole or in part by the doctrine of laches.

140. Plaintiff's claims are barred in whole or in part by the doctrine of release.

141. Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

142. Plaintiff's claims are barred in whole or in part by the parole evidence rule.

143. Plaintiff's claims are barred in whole or in part by setoff and/or recoupment. *See also* Counterclaim herein below, incorporated by reference.

144. Plaintiff's claims are barred in whole or in part by ratification.

145. Plaintiff's claims are barred in whole or in part by consent.

146. Plaintiff's claims are barred in whole or in part by impossibility, illegality, and/or impracticality.

147. Plaintiff's claims are barred in whole or in part by material breach of contract, and/or unenforceability of contract.

148. Plaintiff's claims are barred in whole or in part by Plaintiff's failure to mitigate damages and contributory negligence.

149. Plaintiff's claims are barred in whole or in part by lack of mutual assent, lack or failure of consideration, failure of conditions precedent, and/or accord and satisfaction.

150. Plaintiff's claims are barred in whole or in part by fraud and/or misrepresentation.

151. Plaintiff has failed to join one or more necessary parties. Defendant denies any and all liability to Plaintiff; but to the extent of any liability, Defendant is entitled to contributions and/or indemnification from one or more parties not joined by Plaintiff.

152. Plaintiff's claims are barred in whole or in part by the equitable maxim that one who seeks equity must do equity.

## **RESERVATION OF RIGHTS**

153. Defendant expressly reserves the right to amend and/or supplement this Answer and the Affirmative Defenses. Defendant reserves the right to raise any additional defenses or counterclaims not asserted herein that may be revealed during the course of discovery or other investigation, or that otherwise are found applicable to it.

WHEREFORE, Defendant respectfully requests judgment in its favor against Plaintiff, dismissal of Plaintiff's Complaint with prejudice, plus payment from Plaintiff to Defendant of Defendant's incurred interest, costs and attorneys' fees pursuant to Sections XXVI and XXVII of the Agreement.

## **COUNTERCLAIM OF JEFFREY CHARLES & ASSOCIATES, INC.**

Defendant/Counter-Plaintiff Jeffrey Charles & Associates, Inc., pursuant to Rule 13 of the Federal Rules of Civil Procedure, files this Counterclaim against Plaintiff/Counter-Defendant Naylor Gardens Cooperative Homes Association, stating as follows:

154. In addition to denying any and all liability to Naylor Gardens, JCA is entitled to damages and recovery from Naylor Gardens for Naylor Gardens' breach of contract.

## PARTIES, JURISDICTION AND VENUE

155. Naylor Gardens is a non-profit housing cooperative association established pursuant to and under the District of Columbia Cooperative Association Act, Title 29, Chapter 11 of the Code of Laws of the District of Columbia with a registered office at 2725 30th Street, S.E., Washington, DC 20020.

156. JCA is a Virginia corporation and property management company authorized to conduct business in the District of Columbia, with a principal place of business of 6422 Grovedale Drive, Suite 201C, Alexandria, Virginia 22310.

157. This Court has subject matter jurisdiction over this action, specifically diversity jurisdiction, because it is a civil matter between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §1332(a). JCA removed this case to this Court from the Superior Court of the District of Columbia. 28 U.S.C. §1446(a).

158. Venue and personal jurisdiction are proper in this Court because Naylor Gardens is located in the District of Columbia, and a substantial part of the events and omissions giving rise to this Counterclaim took place in the District of Columbia. 28 U.S.C. § 1391(b). The Superior Court of the District of Columbia, where Naylor Gardens initially filed this action before it was removed, is within the district of this Court. 28 U.S.C. § 88.

## BACKGROUND

159. On or about June 1, 2023, Naylor Gardens and JCA entered into an agreement for JCA to be the property management company for Naylor Gardens (the "Agreement").

160. A true and accurate copy of the Agreement is attached hereto as **Exhibit 1**.

161. The Agreement contains a "Hold Harmless" provision, stating in part:

> The Owner shall indemnify the Agent against all costs, expenses, attorney's fees, suits, and damages of any nature whatsoever from or in connection with its handling of the property or the performance or exercise of any of the duties or powers of the Agent hereunder, unless due to the negligence or willful misconduct of the Agent. The Owner agrees to save the Agent harmless from all fines, judgements, claims, demands, and actions of any kind, and from liability for injuries or death suffered by any employee or contractor engaged by the Agent for the benefit of the Owner, and as well, from any and all liability for injury or death to any person whomsoever, provided, however, the preceding clause shall not apply in cases of the Agent's negligence or willful misconduct.

Agreement § XXVII.

162. JCA was named as a defendant/respondent in at least two legal proceedings because of its position as management agent of Naylor Gardens (the "Proceedings"):

a. *Barnes v. Naylor Gardens Cooperative Housing Association and Jeffrey Charles & Associates, Inc.*, Case No. 2025-CAB-003623, in the Superior Court of the District of Columbia; and,

b. *In Re: Jeffrey Charles & Associates, Inc.*, United States Department of Labor, Occupational Safety and Health Administration Inspection No. 1715673.

163. Neither of the Proceedings involved negligence or gross misconduct by JCA.

164. Pursuant to Section XXVII of the Agreement, JCA demanded in writing that Naylor Gardens defend and indemnify JCA in both Proceedings.

165. In material breach of the Agreement, including but not necessarily limited to Section XXVII thereof, Naylor Gardens failed and refused to defend and indemnify JCA with respect to both Proceedings.

166. Naylor Gardens' failure to defend and indemnify and otherwise meet its contractual obligations under Section XXVII with respect to the Proceedings has caused damage to JCA, including but not limited to costs, expenses, attorneys' fees, as well as damages associated with making claims for the Proceedings on JCA's own insurance.

167. The Agreement states in part:

> In the event the balance in the Owner's Operating Account is at any time insufficient to pay disbursements due and payable under Paragraph 14(a) above, the Agent will promptly inform the Owner of that fact and the Owner will then remit to the Agent sufficient funds to cover the deficiency.

Agreement § XI(b).

168. In further breach of the Agreement, Naylor Gardens failed to replenish the Operating Account after being informed by JCA that it contained insufficient funds to pay disbursements that were due and payable. By way of example and without limitation, when JCA first began managing Naylor Gardens, JCA informed Naylor Gardens that the payables exceeded the funds in the Operating Account by over $1,000,000. Among the overdue payables was an approximately $70,000 balance owed to Naylor Gardens' legal counsel, a payable to the District of Columbia Water Authority for approximately $800,000, a payable to Washington Gas for over $400,000, and a payable to PEPCO for over $300,000, and payables to the trash contractor for over $100,000, and payables to other vendors for at least $500,000.

169. JCA repeatedly informed Naylor Gardens that funds in the Operating Account were insufficient to cover bills that were due and payable.

170. Multiple times per month, one or more vendors or utilities contacted JCA to say Naylor Gardens was severely delinquent in payments due and/or threaten discontinuance of services without immediate payment. JCA promptly, and often repeatedly, conveyed these communications to the Naylor Gardens' Board of Directors.

171. Naylor Gardens' failure to sufficiently fund its Operating Account resulted in whole or in part from the Naylor Gardens' Board of Directors' actions or omissions, including but not necessarily limited to: the Board' refusal to transfer sufficient funds from its reserves;

the Board's refusal to increase members' carrying charges sufficiently for many years before, during and after JCA's management tenure despite advice to do so; and the Board's general financial decision-making.

172. Naylor Gardens' financial situation in 2023 required laying off on-site employees, as ordered by the Naylor Gardens Board.

173. When JCA began managing Naylor Gardens, there also were numerous outstanding building and other code violations at Naylor Gardens, many of which required extensive repairs and expenditures.

174. Further, Naylor Gardens and its prior management company, Vision Realty, failed and refused to provide access to the onsite software used in managing the property. This software contained information that included but was not necessarily limited to Cooperative member and unit ownership information, tenant information, rent amounts, rent histories, unit statuses, vacancies, maintenance/vendors information and histories, security deposits, accounts payable, receivables, *etc.*

175. As a result of the foregoing, and because Naylor Gardens' books, records and general operations were in such disarray, when JCA began managing Naylor Gardens, two additional full-time employees were required for three months to provide additional bookkeeping, clerical and managerial duties for three months, costing JCA at least Fifty-five Thousand Dollars ($55,000), and one additional employee was hired, costing JCA at least Seventy-eight Thousand Dollard ($78,000). Per the Agreement, these additional employees were to be paid by Naylor Gardens (Agreement §§ X, X(d)), but Naylor Gardens failed and refused to pay them, causing further damage to JCA.

176. The Agreement states in part: "In the event of a material default by either the Owner or the Agent under this Agreement, the Agreement is terminated as of the date the termination notice is received." Agreement § XXV(b).

177. As a result of Naylor Gardens' material breaches of the Agreement aforesaid, on or about June 27, 2024, JCA sent a notice of termination of the Agreement.

178. Although JCA could have ceased its management activities on or about June 27, 2024 under Section XXV(b) of the Agreement, JCA agreed to continue its management duties until September 30, 2024.

179. Absent Naylor Gardens' material breaches of the Agreement aforesaid, the Agreement would have remained in effect, under the then current term, until May 31, 2026.

180. As result of the early termination of the Agreement for cause resulting from Naylor Gardens' breaches, JCA has been, and will continue to be, deprived of the revenue it would have earned under the Agreement from October 1, 2024, through May 31, 2026.

181. With respect to JCA's monthly compensation to be paid by Naylor Gardens under the Agreement, the Agreement states in part:

> The Agent will be compensated for its services under this Agreement by monthly fees, to be paid out of the Project Operating Account and treated as Project expenses. Such fees will be payable on the first (1st) day of each month, in advance, for the term of this Agreement or any renewal term thereof. Each such monthly fee will be in an amount equal to 3.5% of gross receipts of previous month, per month as of same date of this Agreement, which shall include any subleasing fee paid by members.

Agreement § XXIV.

182. Upon information and belief, JCA's monthly compensation under the Agreement for the months of October 2024 through May 2026 would have totaled at least Five Hundred Thousand Dollars ($500,000).

183. JCA is entitled to compensatory damages from Naylor Gardens for the revenue it would have received under the Agreement from the monthly payments described in Section XXIV, for the months of October 2024 through and including May 2026, less any expenses; upon information and belief such damages would have totaled at least Two Hundred Forty Thousand Dollars ($240,000).

184. Naylor Gardens has failed and refused, and continues to fail and refuse, to pay JCA's monthly compensation detailed in Section XXIV of the Agreement, for the months of October 2024 through and including May 2026.

185. Naylor Gardens' breaches of the Agreement further damaged JCA because JCA was required to lay off two full-time employees that were assigned to Naylor Gardens. *See* Agreement § X. In turn, JCA was required to pay $43,000 in severance to these two employees, and JCA's unemployment insurance premiums increased.

186. Section XXVI of the Agreement requires Naylor Gardens to pay JCA's costs of collection, attorneys' fees and interest at six percent (6%) per annum for the sums Naylor Gardens has failed and refused, and continues to fail and refuse, to pay to JCA.

**COUNTERCLAIM COUNT I: BREACH OF CONTRACT**

187. JCA hereby incorporates all foregoing paragraphs as if fully set forth herein.

188. The Agreement is a valid and binding contract between Naylor Gardens and JCA.

189. Naylor Gardens breached its obligations to JCA under the Agreement by its actions and omissions aforesaid, including but not necessarily limited to: a) Naylor Gardens failure to defend and indemnify JCA for the Proceedings and otherwise meet its obligations to JCA with respect to the Proceedings under Section XXVII; b) Naylor Gardens' failure to adequately fund its Operating Account as required by Section XI; and c) Naylor Gardens'

failure and refusal to pay JCA's monthly compensation under Section XXIV of the Agreement for the months of October 2024 through and including May 2026.

190. JCA has been damaged by Naylor Gardens' breaches of the Agreement, in at least the amount of $475,000.

WHEREFORE, JCA respectfully requests that this Court enter judgment in JCA's favor against Naylor Gardens in at least the amount of Four Hundred Seventy-Five Thousand Dollars ($475,000.00), plus interest, costs and attorneys' fees pursuant to Sections XXVI and XXVII of the Agreement.

**JURY DEMAND**

Defendant/Counter-Plaintiff Jeffrey Charles & Associates, Inc. hereby demands a jury trial on all issues so triable.

/s/ Jeffrey S. Danzig
Jeffrey S. Danzig, Esquire
LAW OFFICE OF JEFFREY S. DANZIG, PLLC
DC Bar Number 461541

Respectfully submitted,

JEFFREY CHARLES & ASSOCIATES, INC.
By Counsel:

/s/ Jeffrey S. Danzig
Jeffrey S. Danzig, Esquire
LAW OFFICE OF JEFFREY S. DANZIG, PLLC
111 Park Place
Falls Church, VA 22046
jdanzig@danziglaw.com
(703) 241-4918 – Telephone
(815) 301-9561 – Facsimile
DC Bar Number 461541
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of February 2026, a true and accurate copy of the foregoing was served electronically via the Court's CM/ECF system on all counsel of record.

/s/ Jeffrey S. Danzig
Jeffrey S. Danzig, Esquire
LAW OFFICE OF JEFFREY S. DANZIG, PLLC
DC Bar Number 461541

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION | : | |
| Plaintiff, | : | Case No. 1:26-cv-00244-SLS |
| v. | : | |
| JEFFREY CHARLES & ASSOCIATES, INC. | : | |
| Defendant. | : | |

**COUNTERCLAIM OF JEFFREY CHARLES & ASSOCIATES, INC.**

**Exhibit 1**

# MANAGEMENT AGREEMENT

**BETWEEN:**

**NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION**

**AND:**

**AGENT**

**JEFFREY CHARLES & ASSOCIATES, INC.**

**BEGINNING: JUNE 1ST, 2023**

**ENDING: MAY 31ST, 2026**

# MANAGEMENT AGREEMENT

This Management Agreement ("Agreement") is made June 1st, 2023, between ***Naylor Gardens Cooperative Housing Association*** ("Cooperative") and ***Jeffrey Charles and Associates, Inc.*** ("Agent").

1. **Appointment and Acceptance.** The Board of Directors ("Board") of the Cooperative appoints the Agent as exclusive agent for the management of the property described in Paragraph 2 of this Agreement, and the Agent accepts the appointment, subject to the terms and conditions set forth in this Agreement and the Supplemental Management Plan.

2. **Description of Project.** The property ("Project") to be managed by the Agent under this Agreement is a housing development consisting of land, buildings, and other improvements which make up:

**Naylor Gardens Cooperative Housing Association**

Location: 2725 30th Street, SE
City: Washington State: District of Columbia, 20020
No. of dwelling units: 796

I. **Definitions.** As used in this Agreement and the Management Plan:

a. "Agent" shall be Jeffrey Charles & Associates, Inc.
b. "Agreement" shall be the Management Agreement between the Cooperative and the Agent.
c. "Board" shall be the board of directors of the Cooperative.
d. "Naylor Gardens Cooperative Housing Association Membership Trust/Security Deposit Account." Shall be the interest-bearing account for the benefit of the Cooperative in which the Membership Fees will be deposited.
e. "Carrying Charge" shall be the monthly assessment paid to the Cooperative by each Member of the Cooperative for us in meeting the Cooperative's financial needs and obligations.
f. "Certificate of Incorporation" shall be the Cooperative Articles of Incorporation, filed with the District of Columbia, as may be amended from time to time by the Membership of the Cooperative.
g. "Cooperative" shall be the Naylor Gardens Cooperative Housing Association.
h. "General Operating Reserves" shall be the interest-bearing account for the benefit of the Cooperative that shall hold the amount to be saved as an operating reserve.
i. "Governing Documents" shall be the Articles of Incorporation, By-Laws, House Rules and Regulations of the Cooperative, and Member's ownership documents including Proprietary Leases and Stock Certificates. In the event of any conflict between the provisions of this Agreement and any provision of the Governing Documents, the provisions of this Governing Documents shall control.
j. "Management Plan" shall be the supplemental document to this Agreement and is a comprehensive and detailed description of the policies and procedures to be followed in the management of the Project.
k. "Member/Membership" shall be any person, trust or other legal entity, or any combination thereof who holds a Stock Certificate or certificate of stock and proprietary lease evidencing ownership in the Cooperative.

l. "Membership Fee" shall be the security deposit, or any other fees funds collected by the Agent not including Carrying Charges.
m. "Operating Account" shall be the account holding all Carrying Charges, including any late fees and other amounts receivable on the Owner's account in connection with the management and operation of the Project. The account shall be named "Naylor Gardens Cooperative Housing Association Operation Account."
n. "Owner" shall be the Members and Residents of the Cooperative who are governed by the Board of Directors.
o. "Principal Parties" means the Owner and the Agent.
p. "Project" shall be the property of Naylor Gardens Cooperative Housing Association.
q. "Property Manager" shall be the Agent's employee assigned to manage the Property.
r. "Proprietary Lease" shall refer to the contract between the Cooperative and the Member signed at the time the Stock Certificate is issued. The Occupancy Agreement, along with the Bylaws and the House Rules, list the rights and responsibilities of Members of the Cooperative as well as the obligations of the Cooperative to the Members.
s. "Residents" shall be any person who is either a Member or who holds a legal lease.
t. "Stock Certificate" shall be the document memorializing the sale of a proportionate share of the Cooperative to an individual. Each Stock Certificate shall list the proportionate share of the Cooperative it represents and shall correspond to a single dwelling unit in the Cooperative.

II. **Management Plan.** The Management plan is attached which provides a comprehensive and detailed description of the policies and procedures to be followed in the management of the Project. In many of its provisions, this Agreement will briefly define the nature of the Agent's obligations, with the intention that reference be made to the Management Plan for more detailed policies and procedures.

a. Accordingly, the Owner and the Agent will comply with all applicable provisions of the Management Plan, unless certain provisions are waived with the prior written consent of the Board, regardless of whether specific reference is made thereto in any particular provision of this Agreement. The Management Plan will be incorporated as a part of this Agreement, and copies will be provided to the parties hereto.

III. **Basic Information.** As soon as possible, the Owner will furnish the Agent with a complete set of plans and specifications with copies of all guaranties and warranties pertinent to construction, fixtures, and equipment. With the aid of this information and through inspection by competent personnel, the Agent will thoroughly familiarize itself with the character, location, construction, layout, plan, and operation of the Project, and especially the electrical, heating, plumbing, air-conditioning and ventilation systems, the elevators, and all other mechanical equipment.

IV. **Marketing.** The Agent will carry out the marketing activities prescribed in the Management Plan. Subject to the Owner's prior approval, advertising expenses will be paid out of the Project Operating Account as Project Expenses.

V. **Membership.** The Agent will offer for sale and will sell memberships in the Cooperative, which was established as a market rate cooperative and not as a limited equity cooperative. Incidental thereto, the following provisions will apply:

a. The Agent will follow the Membership selection policy described in the Management Plan and the Governing Documents of the Cooperative.
b. The Agent will show the premises to prospective residents.
c. The Agent will take and process applications for membership, including the administration of a background check. Applications will be subject to Board acceptance or denial. If an application is rejected, the applicant will be told the reason for rejection, and the rejected application, with reason for rejection, will

be kept on file for three (3) years. A current list of prospective Members will be maintained.

d. The Agent will complete all the provided Proprietary Leases and will execute the same in the Cooperative's name, identified thereon as agent for the Owner upon receipt of consent to do so by the Board. The terms of all agreements will comply with the pertinent provisions of the Governing Documents of the Cooperative, and any government agency regulations. Proprietary Leases will be in a form approved by the Owner, but Occupancy Agreements need not to be submitted for the approval of the Owner.

e. The Owner will furnish the Agent with schedules of Carrying Charges as from time to time approved by the Board, showing Carrying Charges for dwelling units and other charges for facilities and services. In no event will such Carrying Charges and other charges be exceeded.

f. The Agent will counsel all prospective Members regarding eligibility for dwelling units that are less than fair market Carrying Charges and will prepare and verify eligibility certifications and recertification in accordance with the Cooperative's Governing Documents.

g. The Agent will collect, deposit, and disburse Membership Fees, if required, in accordance with the terms of each Member's Proprietary Lease and the Governing Documents. Membership Fees and other funds collected by the Agent will be deposited by the Agent in an interest-bearing account for the benefit of the Cooperative separate from all other accounts and funds, with a bank or other financial institution whose deposits are insured by an agency of the United States Government. This account will be carried the Corporation's name and designated of record as "Naylor Gardens Cooperative Housing Association Membership Trust/Security Deposit Account." All instruments should be made payable to "Naylor Gardens Cooperative Housing Association."

h. The Agent acknowledges that there are three categories of units within the Cooperative. The first category includes units occupied by the members named in the Proprietary Lease. The second category includes units which are subleased to third parties by the members named in the Proprietary Lease. The third category includes units which are owned by the Owner and subleased to third parties. The Agent shall be responsible for all leasing operations related to the second and third categories, as more thoroughly described in the Management Plan.

VI. **Collection of Carrying Charges and Other Receipts.** The Agent will collect when due all Carrying Charges, including any late fees and other amounts receivable on the Owner's account in connection with the management and operation of the Project. Such receipts (except for Members' Membership fees/security deposits, which will be handled as specified in Paragraph 8(9) above) will be deposited in an account, separate from all other accounts and funds, with a bank whose deposits are insured by the Federal Deposit Insurance Corporation. This account will be carried in the Owner's name and designated or record as "Naylor Gardens Cooperative Housing Association Operating Account."

VII. **Enforcement of Governing Documents.** The Agent will secure full compliance by each Member with the terms of his or her Proprietary Lease and all other Governing Documents. Voluntary compliance will be emphasized, and the Agent, utilizing the services of the Property Manager will counsel Members and make referrals as appropriate to the community agencies in cases of financial hardship or under other circumstances deemed appropriate by the Agent and the Owner, to the end that involuntary termination of tenancies may be avoided to the maximum extent consistent with sound management of the Project. Nevertheless, and subject to the pertinent procedures prescribed in the Management Plan, the Agent may lawfully terminate any occupancy when, in the Board's judgement and the Board's request, sufficient cause (including but not

limited to nonpayment of Carrying Charges) for such termination occurs under the terms of the Members' Proprietary Lease. For this purpose, the Agent is authorized to consult with legal counsel to be designated by the Owner, to bring actions for eviction and to execute notices to vacate and judicial pleading incident to such actions; provided, however, the Agent keeps the Owner informed of such actions and follows such instructions as the Owner may prescribe for the conduct of any such action. Subject to the Owner's approval, attorney fees and other necessary costs incurred in connection with such actions will be paid out of the Project's Operating Account as Project expenses.

VIII. **Maintenance and Repair.** The Agent will maintain the Project in good repair in accordance with the Management Plan and local codes, and in a condition at all times acceptable to the Owner, including but not limited to cleaning, painting, decorating, plumbing, carpentry, grounds care, and such other maintenance and repair work as may be necessary.

Incidental thereto, the following provisions will apply:

a. Special attention will be given to preventative maintenance and, to the greatest extent feasible, the services of regular maintenance employees will be used.
b. Subject to the Owner's prior written approval, the Agent will contract with qualified independent contractors for the maintenance and repair of heating systems and for ordinary repairs beyond the capability of regular maintenance employees.
c. The Agent will systematically and promptly receive and investigate all service requests from Members, take such action thereon as may be justified, and will keep records of same. Emergency requests will be received and serviced on a twenty-four (24) hour basis. Complaints of a serious nature will be reported to the Owner after investigation.
d. The Agent is authorized to purchase all materials, equipment, tools, appliances, supplies, and services necessary for proper maintenance and repair. This expenditure shall be limited to the amount specified in the annual budget.
e. Notwithstanding any of the foregoing provisions, the prior approval of the Owner will be required for any expenditure which exceeds Five Thousand Dollars ($5,000) in any one instance for labor, materials or otherwise in connection with the maintenance and repair of the Project, except for recurring expenses within the limits of the operating budget or emergency repairs involving manifest danger to persons or property or required to avoid suspension of any necessary service to the Project. In the latter event, the Agent will inform the Owner of the facts as promptly as possible. In the event the Agent makes an expenditure exceeding such amount to perform an emergency repair, the Agent shall provide the Owner with a written explanation of the emergency, the repairs made, and the total cost, within twenty-found (24) hours of making this expenditure.

IX. **Utilities and Services.** In accordance with the Management Plan and the operating budget, the Agent will make arrangements for water, electricity, gas, fuel oil, sewage and trash disposal, vermin extermination, decorating, laundry facilities, and telephone services. Subject to the Owner's prior approval, the Agent will make such contracts as necessary to secure such utilities and services.

X. **Employees.** The Management Plan prescribes the number, qualifications, and duties of the personnel to be regularly employed in the management of the Project, including a Property Manager, maintenance, bookkeeping, clerical, and other managerial employees. All such personnel will be employees of the Agent, and will be hired, paid, supervised, and discharged by the Agent with the approval of the Board, subject to the following conditions:

a. As more particularly described in the Management Plan, the On-Site Property Manager will have duties of the type usually associated with that position. He/She will be directly responsible for the Agent's Property Manager for the coordination of activities in the interest of good overall management.

b. The compensation (including fringe benefits) of the On-Site Property Manager and the maintenance employees will be as approved by the Board of Directors.

c. The Owner will pay for compensation (including fringe benefits) payable to the on-site management and maintenance employees, as prescribed in the Management Plan, and for all local, state, and Federal taxes and assessments (including but not limited to Social Security taxes, unemployment insurance and workman's compensation insurance) incident to the employment of such personnel. Such compensation will be paid out of the Project Operating Account and will be treated as Project Expenses.

d. Compensation (including fringe benefits) payable to the on-site staff, such as the Property Manager, and all bookkeeping, clerical, and other managerial personnel, plus all local, state, and Federal taxes and assessments incident to the employment of such personnel will be borne solely by the Project and will not be paid out of the Agent's fee.

e. The Agent will establish and follow an employment policy that affords Residents maximum opportunities for employment in the management and operation of the Project and, to the extent consistent with that consideration, employment opportunities to lower-income persons in the area.

f. The Agent is an independent contractor. In no event shall the Agent (or its employees) be considered employees of the Owner. However, with regard to any type of communication with the Owner's legal counsel or the Board of Directors, officers, committee members, employees and agents, the Agent and its employees shall be deemed the functional equivalent of officers and employees of the Owner for purposes of the attorney/client privilege and any and all other legal protections afforded to the Owner.

XI. **Disbursements From Owner's Operating Account.**

a. From the funds collected and deposited by the Agent in the Owner's Operating Account pursuant to Paragraph 9 above, the Agent will make the following disbursements promptly when payable:

1. Compensation payable to the employees specified in Paragraph 13(C) above, and for the taxes and assessments payable to local, state, and Federal governments in connection with the employment of such personnel.
2. All sums otherwise due and payable by the Owner as expenses of the Project authorized to be incurred by the Agent under the terms of this Agreement, including compensation payable to the Agent, pursuant to Paragraph 25 below, for its service hereunder.
3. All recurring or budgeted items.

b. In the event the balance in the Owner's Operating Account is at any time insufficient to pay disbursements due and payable under Paragraph 14(a) above, the Agent will promptly inform the Owner of that fact and the Owner will then remit to the Agent sufficient funds to cover the deficiency. The Agent will make all earliest and best efforts to advise the Owner of a reasonably foreseeable risk of Owner's Operating Account holding insufficient funds to pay said disbursements. In no event will the Agent be required to use its own funds to pay such disbursements.

XII. **Budgets.** Annual operating budgets for the Project will be as approved by the Owner. Except as permitted under Paragraph 11(e) above, annual disbursements for each type of operating expense itemized in the budget will not exceed the amount authorized by the approved budget. The Agent will prepare and submit recommended operating budgets for approval for each fiscal year beginning during the term of this Agreement, to the Owner at least one hundred-twenty (120) days before the beginning of the fiscal year so that the budget may be approved sixty (60) days before the beginning of the fiscal year. The Owner will promptly inform the Agent of any changes

incorporated in the approved budget, and the Agent will keep the Owner informed of any anticipated deviation from the receipts or disbursements stated in the approved budget.

XIII. **Records and Reports.** In addition to any requirements specified in the Management Plan or in other provisions of this Agreement, the Agent will have the following responsibilities with respect to records and reports:

a. The Agent will establish and maintain a comprehensive system of records, books, and accounts in a manner conforming to the directives of the Board. All records, books, and accounts will be subject to examination at reasonable hours by any Member of the Board and any other authorized representative of the Owner. All such records will remain the property of the Owner and shall be returned to the Owner within twenty (20) days of termination of this Agreement.

b. With respect to each fiscal year ending during the term of this agreement, the Agent will have an annual financial report prepared by a certified public accountant or other person acceptable to the Owner, based upon the preparer's examination of the books and records of the Owner and the Agent, provided that the Board has given prior written consent. The report will be prepared in accordance with the directives of the Owner, and will be certified by the preparer, and will be submitted to the Board withing thirty (30) days after the end of the fiscal year. Compensation for the preparer's services will be paid out of the Owner's Operating Account as an expense of the Project.

c. The Agent will prepare a monthly report comparing actual and budgeted figures for receipts and disbursements and will submit each such report to the Owner by the fifteenth (15th) of the following month.

d. The Agent will furnish such information (including but not limited to occupancy reports, Resident information, government licenses, balance sheet, income statement, general ledger, aging income report, and trial balance) as may be requested by the Owner from time to time with respect to the financial, physical, or operational condition of the Project.

e. The Agent will prepare and submit in a timely fashion, reports as required by any other institution or auditor.

f. By the fifteenth (15th) day of each month, the Agent will furnish the Owner with an itemized list of all delinquent accounts, as of the eleventh (11th) day of the same month.

g. By the tenth (10th) day of each month, and no later than the fifteenth (15th) day of each month, the Agent will furnish to the Owner with a statement of receipts and disbursements during the previous month, and with a schedule of accounts receivable and payable, copies of contractor and vendor receipts, and reconciled bank statements for the Owner's Operating Account as of the end of the previous month.

h. Upon reasonable advance written notice to the Agent, the Agent will grant access to the Owner or its representatives (including but not limited to its legal representation, consultants, and accountants) to enter any part of the Project to inspect the Project, extract information from all books and records, and/or any other purpose the Owner deems necessary, provided the request is for a reasonable time.

i. The Agent shall respond substantively to any inquiry by the Owner with respect to any report described herein within two (2) business days of receipt.

XIV. **Fidelity Bond.** The Agent will furnish, at its own expense, a fidelity bond in an amount which is at least equal to the gross potential income for three months and is conditioned to protect the Owner and the Consenting Parties against misappropriation of Project funds by the Agent and its employees. The fidelity bond will designate the Owner as a named insured. The other terms and conditions of the bond, and the surety thereon, will be subject to the approval of the Owner and the Consenting Parties. In the event that any employee, principal owner, director, officer and/or

agent of the Agent is adjudged to having embezzled or otherwise converted funds or other property of the Owner, then Agent agrees to assign to the Owner that portion of the proceeds received by the Agent from its fidelity bond provider as a result of said embezzlement.

XV. **Bids, Discounts, Rebates, etc.** The Agent will obtain contracts, materials, supplies, utilities, and services on the most advantageous terms to the Project, and is authorized to solicit bids, either formal or informal, for items that can be obtained from more than one source. The Agent will secure and credit to the Owner all discounts, rebates, or commissions obtainable with respect to purchases, service contracts, and all other transactions on the Owner's behalf. The Owner and Agent agree that all goods and services purchased from individuals or companies having an identity-of-interest with the Agent or Owner shall be purchased at costs not in excess of those that would be incurred in making arms-length purchases on the open market.

The Board and/or its representatives and the Agent shall solicit written cost estimates (i.e., bids) from at least three (3) contractors or suppliers for any work item which the Owner or the Agent estimates will cost $5,000 or more and for any contract or ongoing supply or service agreement arrangement which is estimated to exceed $5,000 per year. Each person or entity from which a bid is solicited must be properly licensed by the United States, and the District of Columbia, to the extent that the statutes, ordinances, or regulations of any governmental unit or agency require licensure of persons or entities engaging in the business of providing services or supplying the goods that are the subject of the bid. The Agent shall be responsible for obtaining proof of such licensure, which it shall submit to the Owner upon reasonable demand. The Agent agrees to accept the bid which represents the lowest price taking into consideration the bidder's reputation for quality of workmanship or materials and timely performance, and the time frame within which the service of goods are needed. For any contract or ongoing supply or service arrangement obtainable from more than one source and estimated to cost less than $5,000, the Agent shall solicit verbal or written cost estimates, as necessary to assure that the Owner is obtaining services, supplies, and purchases at the lowest possible cost. The Agent must make a written record of any verbal estimate obtained. Copies of all required bids and documentation of all verbal cost comparisons made by the Agent shall be made part of the Owner's records and shall be retained for three (3) years from the date the work was completed. This documentation shall be subject to inspection by the Secretary or his/her designee, and the Owner. The Agent agrees to submit such documentation upon request. The Agent further agrees to disclose to the Owner any financial interest that the Agent may have related to the proposed contractor at the time of the bid submission.

The Agent further agrees that bids will be obtained from, or contracts entered into with suppliers who agree to furnish a reasonable warranty, in writing, of the goods supplied. As to bids or contracts for the provision of services in excess of $5,000, the contractor from whom the bid is sought must give, in writing, a written warranty as to the materials and workmanship for a period of time deemed reasonable by the Board. Furthermore, the contractor must provide evidence of sufficient worker's compensation and liability insurance, and acknowledge in writing that acceptance of the bid is contingent upon the contractor obtaining a performance bond for the completion of the Project, a payment bond ensuring payment of all subcontractors, and that periodic payments under the contract are conditioned upon obtaining from all contractors and subcontractors, and any other party with mechanics lien or materialman's lien rights, executed waivers of those rights. These conditions may only be waived by a vote of the Board of Directors, or in the event of the necessity of emergency repairs as described in Paragraph 11(e) of this contract.

XVI. **Meetings.** The Agent will attend at least eleven (11) Board meetings and one (1) Membership meeting during each year that this agreement is in effect. The Board may request the Agent to attend additional meetings.

XVII. **Social Services Program.** If the Board determines it is applicable, the Agent will be responsible to the Owner for carrying out the social services program described in the Management Plan.

XVIII. **Member-Management Relations.** If the Board determines it is applicable, the Agent will encourage and assist residents of the Project in forming and maintaining representative organizations to promote their common interests and will maintain good-faith communication with such organizations to the end that problems affecting the Project and its residents may be avoided or solved on the basis of mutual self-interest.

XIX. **On-Site Management Facilities.** Subject to the further agreement of the Owner and Agent as to more specific terms and prior written consent of the Board, the Agent will be allowed to maintain a management office within the Project, to be shared with the Board, and the Owner will make no rental charge for the same.

XX. **Insurance.** Owner agrees to procure and maintain, or at the request and expense of the Owner, Agent will procure and maintain, at all times during the term hereof such fire, extended coverage, public liability, workers' compensation, umbrella liability, business interruption and other policies in amounts as are commercially reasonable for like facilities, insuring both Owner and Agent as primary insured for tort liability and insuring Owner as primary insured for property liability. The owner agrees to provide Agent with, where appropriate, copies of certificates of insurance naming the Agent as an additional insured. Owner further agrees that the Agent may terminate this Agreement if, at any time during the term of this Agreement, Owner cancels or refuses to renew or obtain insurance for the Project in the amounts and with the types of coverage as set forth herein, and replacement insurance is not obtained by the Owner within fifteen (15) days after the written request of the Agent.

XXI. **Other Insurance.** Agent represents that it currently maintains and shall maintain, with financially sound and reputable companies, insurance on all of its properties in at least such amounts and against at least such risks as are usually and reasonably insured against by entities of similar size engaged in the same or similar business. Such insurance shall include the following coverage: 1) Commercial General Liability, 2) Workers Compensation, 3) Commercial Automobile Liability, 4) Commercial Umbrella Liability, and 5) Errors and Omissions Liability. Agent agrees that it will not unreasonably reduce the amounts or coverage of such insurance from the amounts or coverage currently in place and that it will increase such amounts and provides additional insurance against such risks such that its insurance in place, from time to time, shall be consistent with the foregoing representation.

XXII. **Compliance with Governmental Orders.** The Agent will take such actions as may be necessary to comply promptly with any and all governmental orders or other requirements affecting the Project, whether imposed by Federal, State, County, or Municipal authority, subject, however, to the limitation stated in Paragraph 11(e) with respect to repairs. Nevertheless, the Agent shall take no such action so long as the Owner is contesting, or the Owner in writing of all notices of such orders or other requirements, within seventy-two (72) hours from the time of their receipt. Agent's responsibilities under this Paragraph will include, but not be limited to:

a. Applying for, obtaining, and maintaining all licensees and permits required of the Owner or Agent in connection with the operation and management of the Project. The Owner will cooperate with the Agent to execute and deliver all applications and any other documents necessary to maintain compliance.
b. Make all best efforts necessary to comply with all governmental requirements and to discharge any lien, encumbrance, or charge on or with respect to the Property. Comply with the homestead deduction requirements of OTR and the requirements of OPM Compliance.
c. Notify Owner of the need to retain legal counsel for the Property for the purpose of instituting any and all legal actions or proceedings reasonably necessary to collect charges, insurance proceeds, condemnation awards, rent or other income to the Project, to

abate or reduce any taxes upon the property, or to dispossess guests, tenants, or other persons, or to cancel or terminate any lease or license for default.

XXIII. **Nondiscrimination.** In the performance of its obligations under this Agreement, the Agent will comply with the provisions of any Federal, state, or local law prohibiting discrimination in housing on the grounds of race, color, sex, creed or national origin, handicap, or familial status including Title VI of the Civil Rights Act of 1964 (Public Law 88-352, 78 Stat. 241), all requirements imposed by or pursuant to the Regulations of the Secretary (24 CFR, Subtitle A, Part 1) issued pursuant to that title; regulations issued pursuant to Executive Order 11063, and Title VIII of the 1968 Civil Rights Act and any subsequent amendment to any of the above stated statutes, ordinances, and regulations.

XXIV. **Agent's Compensation.** The Agent will be compensated for its services under this Agreement by monthly fees, to be paid out of the Project Operating Account and treated as Project expenses. Such fees will be payable on the first (1st) day of each month, in advance, for the term of this Agreement or any renewal term thereof. Each such monthly fee will be in an amount equal to 3.5% of gross receipts of previous month, per month as of same date of this Agreement, which shall include any subleasing fee paid by members. No further charge shall be made by the Agent for the services provided in this Agreement without the consent of the Board. The Agent will propose and get advanced written approval from the Board for any project management fees for contracts over $200,000. Said project management fees shall be determined based on the size, cost, and complexity of the project but shall not exceed [to be determined]. Contracts under $200,000 shall not be subject to any additional project management fees.

XXV. **Term of Agreement.** This Agreement shall be in effect for a period of three (3) years, beginning on **June 1st, 2023,** and ending on **May 31st, 2026,** under the following conditions:

a. This Agreement may be terminated by the Owner or the Agent with or without cause at any time, provided at least ninety (90) days advance notice thereof is given, this Agreement will automatically renew itself for successive one-month terms unless either party notifies the other to the contrary in writing thirty (30) days prior to the expiration date or any renewal term thereof.
b. In the event of a material default by either the Owner or the Agent under this Agreement, the Agreement is terminated as of the date the termination notice is received.
c. Upon termination, the Agent will transfer all funds held for the Owner, including security deposits, and submit to the Owner any financial statements required by the Owner. After the Principal Parties have accounted to each other with respect to all matters outstanding as of the date of termination, the Owner will furnish the Agent security in form and principal amount satisfactory to the Agent against any obligations or liabilities the Agent may properly have incurred on behalf of the Owner hereunder. The Agent, upon termination, shall promptly, but not later than twenty (20) days after the effective date of termination, surrender possession of all the Owner's books, statements and records, and related materials belonging to the Owner that are in the Agent's possession, custody or control to the Board or newly designated agent, if any, and otherwise cooperate in good faith in the smooth transition to the newly designated agent, if any. The Agent shall not be entitled to any compensation or reimbursement of cost for activities related to the turnover of records with the exception of any shipping or delivery expenses.

XXVI. **Default.** In the event of default of any sum due under this Agreement:

a. By the Owner, the Agent shall be entitled to recover, in addition to the unpaid sums, interest on the unpaid balance at the rate of 6% per annum from the date of default plus the Agent's costs of collection, including reasonable attorney's fees.
b. By the Agent, including those described in Paragraph 27(c) below, the Owner shall be entitled to recover, in addition to the unpaid sums, interest on the unpaid balance at the rate of 6% per annum from the date of default plus the Owner's costs of collection, including reasonable attorney's fees.

c. In the event that late payment fees, government-issued citations, or any other charges are improperly incurred to the Owner as a result of the Agent's failure to execute its duties under this Agreement, the Agent shall pay for and reimburse all such sums to the Owner.

XXVII. **Hold Harmless.** The Owner shall indemnify the Agent against all costs, expenses, attorney's fees, suits, and damages of any nature whatsoever from or in connection with its handling of the property or the performance or exercise of any of the duties or powers of the Agent hereunder, unless due to the negligence or willful misconduct of the Agent. The Owner agrees to save the Agent harmless from all fines, judgements, claims, demands, and actions of any kind, and from liability for injuries or death suffered by any employee or contractor engaged by the Agent for the benefit of the Owner, and as well, from any and all liability for injury or death to any person whomsoever, provided, however, the preceding clause shall not apply in cases of the Agent's negligence or willful misconduct. The Agent shall indemnify the Owner against all costs, expenses, attorney's fees, suits, and damages of any nature whatsoever from or in connection with any loss, damage liability, cost, or expense (including reasonable attorney's fees) that the Owner may incur or sustain as a result of the negligence or intentional misconduct of the Agent.

XXVIII. **Related Parties.** It is understood by the parties that Jeffrey Charles Facilities Management, LLC is an affiliated company with a principal of Jeffrey Charles and Associates, Inc.

XXIX. **Interpretive Provisions.**

a. The Agreement constitutes the entire agreement between the Owner and the Agent with respect to the management operation of the Project, and no change will be valid unless made by supplemental written agreement executed by the Principal Parties.

b. This Agreement has been executed in several counterparts, each of which shall constitute a complete original Agreement which may be introduced in evidence or used for any other purpose without production of any of the other counterparts.

c. Where context requires, words in the singular should be substituted for the plural and vice versa, and words in the masculine should be substituted for any gender.

IN WITNESS WHEREOF, the parties to this Agreement by their duly authorized officers have executed this Agreement on the date first above written.

WITNESS:

DocuSigned by:
Jamie K. Blair
F5269ADBAD844D0...

**OWNER:** Naylor Gardens Cooperative Housing Association

DocuSigned by:
[signature]
C7C7DD095F3B4B2...
David Muir, President

DocuSigned by:
Thy Harrison
9925DD260C0C465...
Thy Harrison, Treasurer

WITNESS:

[signature]

**AGENT:** Jeffrey Charles & Associates, Inc.

[signature]
Jeffrey C. Turner, President