**VISION REALTY EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION**,<br><br>Plaintiff,<br><br>v.<br><br>**JEFFREY CHARLES & ASSOCIATES, INC.,**<br><br>Defendant/Third-Party Plaintiff,<br><br>v.<br><br>**VISION REALTY MANAGEMENT,**<br><br>Third-Party Defendant. | : | Case No. 1:26-cv-00244-SLS |

**ANSWER OF THIRD-PARTY DEFENDANT VISION REALTY MANAGEMENT TO THIRD-PARTY COMPLAINT**

Third-Party Defendant Vision Realty Management ("Vision"), by and through undersigned counsel, hereby submits its Answer to the Third-Party Complaint filed by Jeffrey Charles & Associates, Inc. ("JCA"), pursuant to Rules 8(b) and 12 of the Federal Rules of Civil Procedure.

**GENERAL DENIAL**

Pursuant to Federal Rule of Civil Procedure 8(b)(3), Vision hereby denies each and every allegation contained in the Third-Party Complaint and generally denies all liability alleged by Third-Party Plaintiff Jeffrey Charles and Associates (JCA), demands strict proof thereof.

**ANSWER TO SPECIFIC ALLEGATIONS**

1. Vision denies all allegations in Paragraph 1 of the Third-Party Complaint.

**PARTIES, JURISDICTION AND VENUE**

2. Defendant is without sufficient information to admit or deny the allegations in Paragraph 2 of the Third-Pary Complaint.

3. Defendant is without sufficient information to admit or deny the allegations in Paragraph 3 of the Third-Pary Complaint.

4. Vision admits the allegations in Paragraph 4.

5. Vision admits the allegations in Paragraph 5.

6. Allegations of jurisdiction require no response. To the extent that a response is required, Defendant denies the allegations in Paragraph 6 that the Court has jurisdiction over this matter and these parties. Defendant is without sufficient knowledge or information to admit or deny the second sentence of Paragraph 6.

7. Vision admits that Naylor Gardens is located in the District of Columbia. Vision is without sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 7.

8. Vision admits to the allegations in Paragraph 8.

9. Vision admits to the allegations in Paragraph 9.

10. Vision admits to the allegations in Paragraph 10.

11. Vision admits that it had a Management Agreement with Naylor Gardens (attached as Exhibit A). Vision denies any allegations that are not expressly covered by the Management Agreement.

12. Vision denies all allegations of Paragraph 12.

13. Vision denies the allegations in subsections a-c of Paragraph 13. Vision is without sufficient knowledge or information to admit or deny the allegations subsection d pertaining to JCA's deposits of funds on behalf of Naylor Gardens and denies the last 3 sentences in subsection d of Paragraph 13. Vision denies the allegations in subsections e-g of Paragraph 1

14. Vision denies the allegations in Paragraph 14.

15. Vision denies the allegations in Paragraph 15.

16. Vision denies the allegations in Paragraph 16.

17. Vision denies the allegations in Paragraph 17.

**COUNT I: CONTRIBUTION AND INDEMNIFICATION**

18. Vision incorporates all foregoing responses in the foregoing paragraphs as if fully set forth herein.

19. Vision denies the allegations in Paragraph 19.

20. Vision is without sufficient knowledge or information to admit or deny the allegations regarding JCA's incurrence of attorneys' fees and legal costs and denies the remaining allegations in Paragraph 20.

21. Vision denies the allegations in Paragraph 21.

**COUNT II: TORTIOUS INTERFERENCE WITH JCA'S CONTRACT AND BUSINESS RELATIONSHIP WITH NAYLOR GARDENS**

22. Vision incorporates all foregoing responses in the foregoing paragraphs as if fully set forth herein.

23. Vision admits to Paragraph 23.

24. Vision denies the allegations in Paragraph 24.

25. Vision denies the allegations in Paragraph 25.

26. Vision denies the allegations in Paragraph 26.

27. Vision denies the allegations in Paragraph 27.

28. Vision denies the allegations in Paragraph 28.

29. Vision denies the allegations in Paragraph 29.

30. Third Party Plaintiff follows Paragraph 29 of the Third-Party Complaint with a "Prayer for Relief" that does not require a response. To the extent that a response is required, Vision denies that Third Party Plaintiff is entitled to any relief.

**JURY DEMAND**

31. Defendant hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**ADDITIONAL AND AFFIRMATIVE DEFENSES**

Without admitting any liability, Vision asserts the following defenses:

1. The Third-Party Complaint in whole or in part fails to state a claim upon which relief can be granted.

2. Vision owed no contractual or legal duty to JCA that would support indemnification or contribution.

3. Any damages alleged were caused by the acts or omissions of other parties, including JCA and/or Naylor Gardens, and not by Vision.

4. Vision performed all duties in accordance with applicable housing codes, and contractual obligations.

5. Claims against Vision are barred by applicable statutes of limitations.

6. Vision's conduct was not the proximate cause of any alleged injury or damage.

7. None of the allegations of the Third-Party Complaint shall be deemed admitted unless specifically admitted in the answer.

8. Third-Party Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel and/or laches.

9. Third-Party Plaintiff's claims are barred in whole or in part by the doctrine of contributory negligence.

10. Third-Party Plaintiff's claims are barred in whole or in part by setoff and/or recoupment.

**RESERVATION OF RIGHTS**

11. Vision reserves the right to assert additional defenses as discovery progresses.

**PRAYER FOR RELIEF**

WHEREFORE, Vision Realty Management prays that its answer be deemed good and sufficient and all claims by Third-Party Plaintiff against Third-Party Defendant be dismissed, with prejudice, and such other and further relief, legal and equitable, including attorney's fees be awarded Third-Party Defendant.

Respectfully submitted,
/s/ Lloyd J. Jordan
D.C. Bar No. 480203
Counsel for Vision Realty Management
Motley Waller LLP
300 New Jersey Avenue, NW
Washington, DC 20001
202-347-0179
lloyd.jordan@motleywaller.com

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on this 26th day of May, a true and correct copy of the foregoing was served electronically via the Court's CM/ECF system on all counsel of record.

Respectfully submitted,
/s/ Lloyd J. Jordan
D.C. Bar No. 480203
Counsel for Vision Realty Management
Motley Waller LLP
300 New Jersey Avenue, NW

Washington, DC 20001
202-347-0179
lloyd.jordan@motleywaller.com

EXHIBIT A

Lea-Bradford

CONFIDENTIAL

# MANAGEMENT CONTRACT

**THIS MANAGEMENT CONTRACT** (the "Agreement") is made and entered into as of the 1st day of September 2018, by and between **NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION, INC.**, a District of Columbia entity ("Association") and **VISION REALTY MANAGEMENT, LLC**, a Maryland limited liability company ("Agent").

**WITNESSETH THAT, WHEREAS:**

1. Agent possesses skill and knowledge regarding the management of multi-family residential projects.

2. Association desires to secure and retain services in managing and operating the property containing Seven Hundred Ninety-six (796) units located on a 43-acre parcel of the Hillcrest Neighborhood with an office located at 2725 30th Street, SE, Washington, DC 20020, and Agent is willing to furnish such services, all subject to the terms and conditions set forth in this Agreement.

**NOW, THEREFORE, FOR AND IN CONSIDERATION** of the mutual covenants hereinafter contained, Association and Agent agree as follows:

## ARTICLE I.

## DEFINITIONS

I.1. Agent. "Agent" means Vision Realty Management, LLC (VRM) and/or its agents, representatives and employees.

I.2. "Agent's Designee". Agent's Designee means a Corporate Employee of the Agent who provides services to assist in the discharge of Agent's duties hereunder.

I.3. "Agent's Employees". "Agent's Employees" means employees of the Agent who provide services to assist in the discharge of Agent's duties hereunder. "Agent's Employees" shall include, as defined below, Corporate Employees and any On-Site Employees employed by the Agent to assist Agent in the discharge of its duties hereunder.

I.4. "Agreement". Agreement shall mean the Management Contract between the Agent and Association.

I.5. "Assessments". Assessments means all assessments, rates, and charges established by the Association that the Owners are obligated to pay as their share of the expenses of the Association. Assessments include, but are not limited to, maintenance and service charges, interest and late payment costs.

I.6. "Association". Association means Naylor Gardens Cooperative Housing Association.

I.7. "Board". Board or Board of Directors shall be the duly elected governing body for the Association.

I.8. "Corporate Employees". Corporate Employees means persons employed by the Agent, such as "Agent Representative" and corporate accounting and payroll personnel, who are not located on the premises of the Association Property but who provide services to assist the Agent in the performance of its duties hereunder.

I.9. "Governing Documents". Governing Document shall be Articles of Incorporation, By-Laws, Policy and Procedure Bulletins of the Association and Owners' Proprietary Lease as well as any federal, state or local laws, rules or regulations applicable to the Association.

I.10. "On-Site Employees". On-Site Employees means persons employed by the Agent who are located on the premises of the Association Property but who provide services to assist the Agent in the performance of its duties hereunder.

I.11. "Operating Account". Operating Account shall be the account holding all Assessments, including any late fees, and other amounts receivable on the Association's account in connection with management and operation of the Property.

I.12. "Owners". Owners means persons owning shares in the Association.

I.13. "Property". Property means the common elements (as defined in the Governing Documents) of the Association.

I.14. "Property Manager". Property Manager means an On-Site Employee of the Agent assigned to manage the Property as defined in the Management Plan, and in accordance with applicable law, the Governing Documents, and this Agreement.

## ARTICLE II.

## APPOINTMENT AND TERM

II.1. Appointment. The Association hereby appoints the Agent as the managing agent of the Property upon the terms and conditions herein set forth.

II.2. Governing Documents. The Agent acknowledges and agrees that the Association Board is responsible for governing the affairs of the Association pursuant to the terms of the Association's

Governing Documents. The Agent acknowledges and agrees that it also will act in accordance with the Association's Governing Documents.

II.3. Cooperation. The Parties agree to cooperate with each other in the efficient operation of the Association for the benefit of the Owners. The Agent and the Association will jointly create a comprehensive and detailed Management Plan to describe all policies and procedures to be followed in the management of the Property.

Accordingly, the Association and Agent will comply with all applicable provisions of the Management Plan, unless certain provisions are waived with the prior written consent of the Board, regardless of whether specific reference is made thereto in any particular provision of this Agreement. The Management Plan will be incorporated as part of this Agreement, and copies will be provided to the parties hereto.

II.4. Term. This Agreement shall commence on the **August 20th, 2018 or sooner should the Association desire (**the "Effective Date"), and shall remain in force until the last day of **August 2021**, with a three -year renewal option and thereafter for like periods from time to time, subject to termination of this Agreement as outlined below.

**ARTICLE III.**

**AGENT'S FEE**

III.1. Fee to Agent. Agent shall receive as a fee for its services (described in Schedule A) performed pursuant to this Agreement a monthly fee, payable in arrears on or before the 5th day of each succeeding month so long as this Agreement is in effect. The Association shall pay to the Agent as compensation for the Management Services for leasing of units owned by Association for rental purposes, as well as Owner monthly assessments, an amount (the "Management Fee") equal to three and one quarter percent (3.25%) of the monthly Gross Collected Receipts. The Association shall pay to the Agent as compensation for the Management and subleasing of units owned by Owners and occupied by tenants an amount (the "Sublease Management Fee") equal to 7% of Gross Collected Receipts; three percent (3.0%) to Agent and four percent (4.0%) to Association.

III.2. Association's Expense. Nothing herein contained shall be deemed to create upon Agent, in its capacity as Agent, any obligation to pay from its own separate funds any amounts accruing in connection with the operation of the property for any Expenses of Operation. All Expenses of Operation shall be paid from revenues of the Property.

**ARTICLE IV.**

**OPERATION OF THE PROPERTY**

IV.1. Powers and Duties. Agent shall have the power and responsibility for all operations, maintenance, staffing, negotiating of contracts with Association, and otherwise managing and operating the Property.

Agent also covenants and agrees to: (a) perform all tasks and services in a faithful, diligent and efficient manner in accordance with standards and best practices; (b) use its best efforts to prevent waste of the assets of the Property; (c) maintain businesslike relations with residents and visitors of the Property; (d) use its best efforts to collect all revenues, rents, fees and other sums and charges due from residents of the Property; and (e) obtain the prior approval of the Association by a written request to the Board of Directors provided in the monthly financial package and to be approved at a regularly scheduled Board Meeting, prior to the expenditure of any non-routine or non-recurring expenditure, for the maintenance or repair of the Property costing or estimated to cost $2,500.00 or more, excluding emergency repairs. This expenditure shall be limited to the amount specified in the annual budget.

In reference to clause IV.1 (e) above, Association represents that there are nine (9) members of the Board of Directors, this includes 4 officers; a President, Vice President, Secretary, and Treasurer Association agrees that it shall provide Agent a current list of the names and contact information, including email addresses, for the Directors, and that it shall promptly notify Agent of all changes in the names and contact information of the Officers during the Term of this Agreement.

Association and Agent further agree that "approval" of an expenditure under said clause (e) may be given to Agent by means of an email or telephonic communication from the Association's President, or his designated delegate, following the Board of Directors approval of each such expenditure as specified in said clause. The Association agrees that Agent shall be entitled to rely on said communication of approval from the President or his/her delegate without further inquiry.

IV.2. Agent's Employees. Agent shall determine operating standards and policies, direct the selection, employment, termination of employment, supervision, direction, training, promotion and assignment of the duties of all On-Site employees of the Property, including a certified Property Manager, as Agent determines to be reasonably necessary and as the Association may from time to time reasonably request.

The Association shall provide on the Property, necessary and suitable office space for use by the On-Site Employees. Agent shall file all federal, state and local tax reporting forms for the On-Site Employees, as required by law. Association shall pay to Agent all payroll, direct overhead, and benefit costs associated with the employment of the On-Site Employees, upon disbursement of each biweekly payroll. Such compensation will be paid out of the Property Operating Account and will be treated as Property expenses.

IV.3. Additional Responsibilities of Agent. Except as otherwise directed from time to time by the Association in writing, and subject to the Association providing the funding provided for

hereunder, Agent shall in its own name, as agent, or in the name of the Association, undertake the following:

(a) apply for, obtain and maintain all licenses and permits required of the Association or Agent in connection with the operation and management of the Property; Association agrees to execute and deliver any and all applications and other documents as shall be reasonably required and to otherwise cooperate, in all reasonable respects, with Agent in applying for, obtaining and maintaining such licenses and permits;

(b) use its best efforts to do or cause to be done, all such acts and things in and about the Property as shall be necessary to comply with all Requirements, and to discharge any lien, encumbrance or charge on or with respect to the Property and the operation thereof;

(c) use its best efforts to cause the Property to comply with all applicable covenants and provisions of any deed of trust or mortgage, and pay, when due, the installments of principal, interest, or other fees or charges due in relation thereto;

(d) notify Association of the need to retain legal counsel for the Property for the purpose of instituting any and all legal actions or proceedings as shall be reasonably necessary to collect charges, insurance Proceeds, condemnation awards, rent or other income from the Property, to abate or reduce any taxes upon the property, or to dispossess guests, tenants or other persons in possession there from, or to cancel or terminate any lease, or license for default there under;

(e) Comply with Regulatory rules and regulations in accordance with standards established by state and local laws, the Governing Documents and the approved budget of the Association affecting the Property;

(f) Agent as part of its duties will conduct an initial inspection of the property to include the building exterior, common areas and all units. Upon conclusion of said inspection the Agent will notify the Association of their findings which shall identify maintenance, repair, and related issues to create a Preventive Maintenance Plan; as well to identify Capital Repairs and Improvements.

IV.4. Reimbursements to Agent. In addition to the Management Fee provided for in Article II above, Agent shall be entitled to be reimbursed upon demand for the following direct out-of-pocket costs and expenses reasonably incurred in rendering services to the Property:

(a) the Compensation and expenses paid or reimbursed to all specialists, not regularly employed by Agent or its affiliates, rendering services to the Property upon the consent of Association;

(b) expenses (other than Compensation) paid by Agents, or its affiliates to any Employees rendering services to the Property;

(c) any sums advanced by Agent, with permission from Association or its designee, for payment of any Expenses of Operation;

Statements covering the aforesaid reimbursements shall be submitted by Agent to Association.

IV.5. Responsibilities of Manager. To affect its covenants under the Agreement the Agent may in its discretion also undertake the following:

(a) subject to Board approval, enter into such contracts for the furnishing of utilities and maintenance and other services to the Property as shall be reasonably necessary for the proper operation and maintenance thereof;

(b) subject to the approval of Association, and at Association's expense, make all repairs, decoration, revisions, alterations and improvements to the Property as shall be reasonably necessary for the proper maintenance thereof in good order, condition and repair in accordance with the local codes; and

(c) purchase such operating supplies and operating equipment (subject to Association's approval for amounts over $2,500.00) for the proper operation of the Property.

Agent will obtain a minimum of 3 proposals for service contracts above $2,500 and submit to Association a bid comparison for their approval. Agent will also insure that the contractor is licensed, properly insured and eligible to perform services in the District of Columbia.

**ARTICLE V.**

**INSURANCE**

V.1. Coverage. Association agrees to procure and maintain, or at the request and expense of Association, Agent will procure and maintain, at all times during the term hereof such fire, extended coverage, public liability, worker's compensation, umbrella liability, business interruption, director's and officers liability, employment practices liability, boiler, and public liability and other policies in amounts as are commercially reasonable for like properties, but in no event less than that required pursuant to any mortgage or deed of trust upon the Property, insuring both Association and Agent as primary insureds for tort liability and insuring Association as primary insured for property liability. Association agrees to provide Agent with, where appropriate, copies of certificates of insurance naming Agent as an additional insured. Association further agrees that Agent may terminate this Agreement if, any time during the term of this

Agreement, Association cancels or refuses to renew or obtain insurance for the Property in the amounts and with the types of coverages as set forth herein, and replacement insurance is not obtained by Association within 15 days after the written request of the Agent.

V.2. Waiver of Liability and Subrogation. Neither Agent nor Association shall assert against the other and do hereby waive with respect to each other, any claims for any losses, damages, liability or expenses (including attorneys' fees) incurred or sustained by either of them on account of damage or injury to persons or property arising out of the ownership, operation and maintenance of the Property, to the extent that the same are covered by the insurance required under this Article.

V.3. Other Insurance. Agent represents that it currently maintains and shall maintain, with financially sound and reputable insurance companies, insurance on all of its properties in at least such amounts and against at least such risks as are usually and reasonably insured against by entities of similar size engaged in the same or similar business. Agent shall periodically provide written proof of coverage. There shall be no cancellation or material alteration of coverage without the Agent's insurer providing no less than 30 days' written notice to Association. Agent agrees that it will not unreasonably reduce the amounts or coverage of such insurance from the amounts or coverage currently in place and that it will increase such amounts and provide additional insurance against such risks such that its insurance in place, from time to time, shall be consistent with the foregoing representation.

## ARTICLE VI.

## ACCOUNTS; WORKING FUNDS; RECORDS AND REPORTS

VI.1. Bank Account. Bank accounts for the Property will be established at a banking institution or institutions mutually approved by Association, such accounts to be in ***Association's name in care of Agent,*** as agent for Association (herein called the "Property Accounts"). Agent will deposit in such Accounts all monies furnished by Association as working funds under Section VI.3 below and all monies received from the operation of the Property and Agent will disburse the same for the purposes set forth in Section VI.2 below. The Association or its designee will also be authorized signers on the account. The Agent hereby acknowledges that it will deposit and maintain all funds belonging to the Association in designated accounts titled in the Association's name and belonging to the Association. Furthermore, that the Agent will not co-mingle funds belonging to the Association with any other entities controlled or managed by the Agent. Agent will only need to be a signor of the "operating account "and "security deposit account". The Association will be a signor on all bank accounts.

VI.2. Expenditures. From the Property Accounts (or, if appropriate, from house banks or petty cash funds available at the Property) Agent is hereby authorized to pay such amounts at such times as are required in connection with the maintenance and operations of the Property, including, without limitation, the following:

(a) All Expenses of Operation;

(b) all other expenses or debt service payments incurred in accord with Association's instructions; and

(c) Payment of all fees and other expenditures or reimbursements which Association or Agent are permitted or required to make under any other provisions of this Agreement, whether due to Agent or others.

Subject to the working capital requirements of the Property, Agent, upon request of Association, shall distribute excess funds from the Property Accounts to Association.

VI.3. Working Fund Requirements. Association, upon request of Agent, shall provide funds, to the extent available to Association to be deposited in Property Operating Accounts, as provided in Section VI.1; sufficient at all times to assure the uninterrupted and efficient operation of the Property. If at any time or from time to time, Agent reasonably believes, as the result of operations or emergencies, that the amounts in the Property Accounts are insufficient to continue operations of the Property in accordance with reasonable standards, Association shall to the extent available, at Agent's request, promptly furnish additional working capital funds.

VI.4. Books and Records. Agent shall receive and maintain all existing records, and, on a going forward basis only, shall cause to be maintained full and adequate books of accounts and such other records as are necessary to reflect the results of the operation of the Property.

VI.5. Association's Rights to Inspect; Accounts and Records. Upon reasonable advance written notice to the general manager of the Property, Agent shall accord to Association, any affiliate of Association, its accountants, attorneys and agents, the right to enter upon any part of the Property at all reasonable times during the term of this Agreement for the purpose of examining or inspecting the same or examining and making extracts of books and records of the Property or for any other Purpose which the Association, or any affiliate of Association, in its discretion, shall deemed necessary or advisable. Agent agrees to cooperate with the Association's Auditor for purposes of performing the annual audit.

## ARTICLE VII.

## TERMINATION RIGHTS

VII.1. Termination by Association. If any one of the following events shall happen during the term hereof:

(a) if Agent shall apply for or consent to the appointment of a receiver, trustee or liquidator of Agent or of all or a substantial part of its assets, file a voluntary petition in bankruptcy, or admit in writing its inability to pay debts as they come due, make

a general assignment for the benefit of creditors, file a petition or an answer seeking reorganization or arrangement with creditors or to take advantage of any insolvency proceeding, or if any order, judgment or decree shall be entered by any court of competent jurisdiction, on the application of a creditor, adjudicating Agent a bankrupt or insolvent or approving a petition seeking reorganization of Agent or appointing a receiver, trustee or liquidator of Agent or of all or a substantial part of its assets, and such order, judgment or decree shall continue unstayed and in effect for any period of one hundred twenty (120) consecutive days;

(b) if Agent shall materially default in the performance or observance of any other material term, covenant, condition or agreement contained herein and fail to cure said default within 30 days after written notice of said default; or

(c) if any representation or warranty made by Agent in this Agreement proves to have been false or misleading in any material respect when made and Agent fails to reasonably cure any such statement within 30 days after receiving written notice thereof; or

Association shall have the right to terminate this Agreement upon thirty (30) business days' written notice to Agent given at any time after the period of grace applicable to any such event, if any, and thereupon this Agreement shall terminate upon the expiration of such thirty (30) day period.

Notwithstanding termination provisions contained in this agreement, if in the Association's opinion the Agent's performance in accordance with this agreement is unsatisfactory, the Association reserves the right to withhold all or partial payment after notification to the Agent of the deficiencies, and allowing agent 30 days to correct same.

VII.2. Termination by Agent. If any of the following events shall happen during the term hereof:

(a) the Association shall fail to provide funds to be deposited in the Property Accounts in accordance with the provisions hereof, and such failure shall continue for a period of thirty (30) business days after written notice by Agent requesting that such funds be so provided; or

(b) if the Association shall apply for or consent to the appointment of a receiver, trustee or liquidator of the Association or of all or a substantial part of its assets, file a voluntary petition in bankruptcy or admit in writing its inability to pay its debts as they come due, make a general assignment for the benefit of creditors, file a petition or an answer seeking reorganization or arrangement with creditors or to take advantage of any insolvency law, or file an answer admitting the material allegations of a petition filed against the Association in any bankruptcy, reorganization or insolvency proceeding, or if an order, judgment or decree shall be entered by any court of competent jurisdiction, on the application of a creditor,

adjudicating the Association a bankruptcy or insolvent or approving a petition seeking reorganization of the Association or appointing a receiver, trustee or liquidator of the Association or of all or a substantial part of the assets of the Association, and such order, judgment or decree shall continue unstayed and in effect for any period of one hundred twenty (120) consecutive days; or

(c) if Association shall materially default in the performance of observance of any other material term, covenant, or condition or agreement contained herein and fail to cure said default within 30 days after written notice of said default.

then Agent shall have the right to terminate this Agreement upon thirty (30) business days' written notice to Association given at any time after the period of grace applicable to any such event, if any, and thereupon this Agreement shall terminate upon the expiration of such 30-day period.

VII.3. Curing Defaults. Any default not involving Payment or deposit of money by Agent or Association, as the case may be, which is susceptible of being cured shall not constitute a basis of termination if the nature of such default will not permit it to be cured within the grace period allotted, provided that within such grace period either Agent or Association (as defaulting party as the case may be) shall have commenced to cure such default and shall proceed to complete the same with reasonable diligence.

VII.4. Certain Rights of Termination. Upon the termination of this Management Agreement for any reason under this or any other Article (including expiration of the term) all deferred or accrued unpaid fees, management fees, charges, reimbursements, including all accrued interest thereon, if any, owed from one party to another arising from the terms and provisions of this Agreement due as of the date of termination shall be paid to the party who is owed money within ten (10) days after the rendition of statements therefor.

VII.5. Effect of Termination. The termination of this Agreement under the provisions of this Article shall not affect the rights of the terminating party with respect to any damages it has suffered as a result of any breach of this Agreement, nor shall it affect the rights of either party with respect to liability or claims accrued, or arising out of events occurring, prior to the date of termination.

VII.6. Remedies Cumulative. Neither the right of termination nor the right to sue for damages nor any other remedy available to either party hereunder shall be exclusive of any other remedy given hereunder or now or hereafter existing at law or in equity.

VII.7. Return of Association's Property. Upon termination of this Agreement, Agent shall return to Association all of Association's property then in Agent's possession or control. Agent shall also take all actions necessary to transfer all contracts, licenses, leases, bank accounts, and other agreements from Agent's name into the name of Association or Association's designee.

## ARTICLE VIII.

## DESTRUCTION AND CONDEMNATION

VIII.1. Damage by Fire and Other Causes.

(a) If, at any time during the term of this Agreement, all or a material part of the Property shall be damaged or destroyed by fire or other casualty or any other cause, and if the damaged portion cannot be fully restored within one year after the occurrence of the event, either Association or Agent may terminate this Agreement. If this Agreement shall not be terminated as the result of any fire or other casualty, the proceeds of any insurance or the equivalent thereof shall be used to pay for the cost of the restoration of the Property and the premises, which shall be carried out with due diligence.

(b) for the purposes of this Article, a material part of the Property shall be deemed to have been damaged or destroyed if fifty (50%) percent or more of the aggregate floor space of the improvements constituting part of Property is so damaged that it become untenantable.

VIII.2. Condemnation.

(a) If the entire Property shall be taken in condemnation proceedings, this Agreement shall terminate as of the date the condemning authority takes possession.

(b) If less than the entire Property shall be taken in condemnation proceedings, Agent and Association shall mutually determine whether the remaining land and building or buildings, after necessary repairs, can economically and feasibly be operated as a Property.
If they cannot mutually agree upon such matter within ninety (90) days after the taking, this Agreement may be terminated by either Association or Agent if sixty (60%) percent of the space in the Property except the corridors is taken and cannot be substantially restored.

## ARTICLE IX.

## GENERAL PROVISIONS

IX.1. Assignment. This Agreement, and any right or obligation hereunder, shall not be assignable, whether by operation of law or agreement, without the consent of the other party hereto.

IX.2. Successors. All terms, conditions and provisions hereof shall extend to, be binding upon and inure to the benefit of the parties hereto, their successors and permitted assigns, but this provision shall not give either party any right of assignment other than that as above set out.

IX.3. Notices to Parties. All notices or other communications required or permitted to be given hereunder shall be in writing, shall be addressed as provided below and shall be considered as properly given (i) if delivered in person, (ii) if sent by overnight delivery service (including, without limitation, Federal Express, EGA, Emery, Purolator, DHL, Airborne or other similar overnight delivery services), (iii) in the event overnight delivery services are not readily available, if mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested or (iv) if sent by prepaid telegram or by telex or facsimile copy and confirmed. Notice so given shall be effective upon receipt by the addressee; provided, however, that if any notice is tendered to an addressee and the delivery thereof is refused by such addressee, such notice shall be effective upon such tender. For the purposes of notice, the addresses of the parties shall the addresses provided most recently to each party.

IX.4. Indemnification. Association hereby indemnifies Agent from, and agrees to hold Agent harmless against, any Claims (as hereinafter defined) by third parties against Agent arising from any act or omission of Agent related in any way to this Agreement, the duties and responsibilities hereunder or the Property. This indemnification shall not apply to acts of gross negligence or bad faith by Agent.

As used in this paragraph, "Claims" include, without limitation, any action, proceeding, or accusation whenever or wherever arising regardless of the merits thereof. This indemnification and hold harmless covers, without limitation, all attorneys' fees, costs and expenses of defending any Claim, any judgment, settlement, payment or resulting injury or liability.

When Agent is indemnified or held harmless pursuant to this paragraph and insurance pays for any Claim, expense, or fee contemplated by this paragraph, then Association need not compensate Agent to the extent that insurance has already compensated Agent.

IX.5. Modification and Change. This Agreement cannot be changed or modified except by a written agreement signed by the parties.

IX.6. Headings. The Article and Section headings contained herein are for convenience of reference only and are not intended to define, limit, or describe the scope or intent of any provisions of this Agreement.

IX.7. Consents. Each party agrees that it will not unreasonably withhold or delay any consent or approval requested by the other party pursuant to the terms of this Agreement.

IX.8. Survival of Covenants. Any covenant, term or provision of this Agreement which, in order to be effective must survive the termination of this Agreement, shall survive any such termination.

IX.9. No Extra Duty for Agent to Provide Funds. Notwithstanding anything to the contrary in this Contract, this Agreement does not impose any duty on Agent to provide funds to Association for any expenses relating to the Property.

IX.10. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument.

**[Signatures on Following Page]**

IN WITNESS WHEREOF, the parties hereto have executed or caused this Agreement to be executed, all as of the day and year first above written.

OWNER: **NAYLOR GARDENS COOPERATIVE HOUSING ASSOCIATION, INC.**

ADDRESS: ______________________________

______________________________

______________________________

PHONE: ______________________________

EMAIL: ______________________________

By: ______________________________ Witness: ______________________________
President

Date: 6-11-18

By: ______________________________ Witness: ______________________________
Treasurer

Date: 6/11/2018.

MANAGER: **VISION REALTY MANAGEMENT, LLC**
6325 Woodside Court, Suite #230
Columbia, Maryland 21046
Phone: (202) 291-5050 Fax: (202) 291-5050
Email: Mario@visionrealtymgt.com

By: ______________________________ Witness: ______________________________
Mario Lloyde/Managing Member

Date: 5/24/2018